(34 South. 139.)

No. 14,057.

SLATTERY et al. v. HEILPERIN & LEONARD.

(Feb. 3, 1902.)

PETITORY ACTION — EVIDENCE — TAXES — ASSESSMENT — TAX SALE — ESTOPPEL — PRESCRIPTION—TAX TITLE—LACHES—TAX DEED —VALIDITY—LAND PATENT—VACATION—EVIDENCE.

1. Even against a possessor in good faith, although without legal title, plaintiff in a petitory action must show that he has some title to the property.

2. An assessor is without authority to assess public property of the state in the name of one without the least interest.

3. Nothing passes by such a tax sale of the property.

4. The state is not estopped from claiming her property by the illegal act of the assessor.

5. Plaintiff in an action on a tax deed cannot give vitality to his title by invoking the plea of prescription, having never been in possession.

6. One takes nothing from the public domain by the plea of prescription.

On Rehearing.

7. This court looks with disfavor upon a claim of ownership of land based on a tax title, where it appears the claimant, after purchase at tax

sale, permitted twenty years to pass without exercising the plainest and most common, as well as important, of all the duties of ownership of property, to-wit, the payment of taxes thereon; and where it appears, or is plainly to be inferred, he only concluded to assert ownership after the land had acquired value through the completion of the levee system, to which he contributed nothing by payment of levee taxes on the land.

8. Where a tax deed is drawn in substantial compliance with the statute, the omission from it of recital that notice had been given to the tax debtor, or that the tax collector, before offering the property in globo, had offered the least quantity of it that any purchaser would buy for the taxes, interest and costs due, does not destroy the *prima facie* valid character of the deed given it by the Constitution.

9. It is incumbent upon the party defending against a tax title to offer some evidence of failure to give notice and of failure of the tax collector to offer at the sale the least quantity of property to rebut the presumption of regularity, before the tax purchaser has thrown upon him the burden of sustaining, by proof, compliance with the legal requirement in such particulars.

10. When the state's tax officials transcend the bounds of their authority, no estoppel results against the state from such unauthorized acts.

11. An indorsement across the face of a land patent, issued by the state, reciting: "This location erroneous, null and void. Warrant returned to locator," received in evidence over objection, does not, of itself, suffice to prove erroneous location, nor the nullity of the patent, nor that the warrant was returned to the locator.

12. Where, on the trial of a petitory action, it appears the title to the land in dispute is apparently in a third person, rather than in the plaintiff, the latter will be nonsuited.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by J. B. Slattery and others against Heilperin & Leonard. The Caddo Levee Board was cited in warrant. Judgment for defendants, and plaintiffs appeal. Amended and affirmed.

Alexander & Wilkinson and Slattery & Slattery (Farrar, Jonas & Kruttschnitt, of counsel), for appellants. Leonard, Randolph & Rendall, for appellees Heilperin & Leonard. David Thompson Land, for appellee Caddo Levee Board.

BREAUX, J. The action was petitory. The land claimed had been assessed in the name of J. G. Richardson. It was offered at tax sale, and plaintiffs, in 1881, became owners at that sale for the sum of $43 and a fraction, as shown by the deeds duly recorded. One of the deeds was dated in June, 1881, and the other in August, 1882. Plaintiffs, in support of their title, pleaded prescription. They also pleaded that their sale operated against the state, and precluded her from giving the land to the levee board.

Defendants trace their title to the United States government, and aver that the lands, being swamp and overflowed lands, inured to the state of Louisiana under the swampland grant (this is not contested by plaintiffs), and that it was granted by the state to the board of commissioners of the Caddo levee district; that it was sold by the board to R. J. Flournoy, and by Flournoy to them, as shown by deeds annexed to their answer.

They cited the levee board in warranty. The latter joined issue with plaintiffs; averred that defendants became owners without warranty; and, further, that plaintiffs' tax title is an absolute nullity, as averred by defendants in their answer. The warrantors, in a supplemental answer to the call in warranty, averred that plaintiffs knew that they acquired no title, but none the less they tendered the amount alleged to have been paid by the plaintiffs at the tax sale, plus the interest.

In order to prove that the land had passed from the state into commerce, plaintiffs introduced two patents in evidence to the property in controversy, less the indorsements on these patents made by the register of the land office. As well mention at this time, in stating the facts, that defendants, while introducing evidence, introduced this indorsement on the patents. The question regarding the admissibility of this evidence, in our view of the issues, has lost all importance. Plaintiffs also introduced their tax deed in evidence.

The register of the land office testified that it appeared from the record of his office that the land had been sold at the land office at Natchitoches, and that the indorsements on the face of the patents made it evident that the entry and conveyance just before mentioned were null, and that the warrants had been returned as before mentioned. The defendants further proved up their title to be as alleged by them.

The judge of the district court, as shown by a brief analysis of the opinion, held that the land belonged to the state, and was not subject to taxation; furthermore, that it was not sold under a valid assessment; that no notice was ever given to the one in whose name it had been assessed; and that the land was sold in block, in violation of article 210 of the Constitution of 1879. From this adverse judgment, plaintiffs appeal.

We take it that plaintiffs do not claim that J. G. Richardson, the one in whose name the land was assessed, ever had a title to the land. He never was in possession. It does not appear that any one of that name was ever known, or that one of that name ever had the least sign or vestige of title to the land. The assessor by whom the assessment was made years ago gave the name of J. B. Richardson to the assessment. This is the basis of plaintiffs' claim to the property. The law under which the assessment was made required the property to be assessed in the name of the owner, advertisement of the property of the delinquent, and notice prior to the sale. None of these formalities were complied with. Moreover, the property was sold in block, in face of the Constitution, which required property sold at tax sale to be adjudicated to the bidder offering to pay the taxes for the least quantity of property offered. The title, lacking the essentials before stated, is not even prima facie valid.

But plaintiffs say that the state of Louisiana assessed the property as belonging to J. G. Richardson, in whose name it was advertised and sold, and that, in consequence, she (the state) is estopped from denying or contesting the validity of the sale; that the estoppel against the state holds good against the defendants, Heilperin & Leonard and the Caddo levee board, all of whom claim, as we have seen, from the state.

The land warrants on which the entries were made were unquestionably returned to the locator. It does not appear that the least objection was urged against their return by the register of the land office to the locator. For more than 20 years after they had been returned no one laid claim to the land. The plaintiffs are scarcely in a position, after these many years of acquiescence by silence, now to urge that the state is estopped. The act of the assessor in thus giving a mere name to an assessment cannot operate as an estoppel under the circumstances. The assessing officer's acts were entirely illegal, and for that reason afford no ground to base a claim to land adversely to the state. The assessing officer, who assesses property not segregated from the public domain, does not bind the state. The land not being taxable, no title passes, and the state is not estopped.

We have noted that plaintiffs' contention is that the state did sell the land and issued a patent. It is well settled regarding all lands that the title remains in the state until the state chooses to part with its title. Patents were written, but the record does not disclose that they were delivered to the asserted patentees. They never laid any claim to the land, or appeared anywhere as the owners. The land continued in the open possession of the state, and was transferred to defendants' authors without any objection from any one. The patentees perhaps could be heard, or their heirs or assigns, but not those who trace their title to the patents without any title whatever except a paper title to which an assessor, without authority, gave the sanction of his name.

Plaintiffs cite with confidence the decisions of the Supreme Court of the United States in which it was decided that a patent once issued either by the state or the United States is conclusive until set aside or annulled by some judicial tribunal. Unquestionably this is generally true. It is also true that one who claims under a patent thus issued, or traces his title to it, must show that he had acquired some right under the patent other than by an unauthorized and illegal assessment.

Plaintiffs further contend that the indorsement in red ink across the face of the patents, bearing no date, nor showing by whom made, was no part of the record, and is not binding upon any one. To this, we think, an easy answer is that plaintiffs cannot be held to be concerned in matter of this entry. The patentees appear to have acquiesced in the cancellation, and to have received the patents, and, for all we know, may have located them elsewhere. The plaintiffs cannot successfully espouse the cause of the original patentees, from whom they hold nothing, only because an illegal tax sale was made early in the 80's. Even as against these patentees,

the record indorsement in the land office would, in all probability, require explanation before treating them as mere nullities signifying, as plaintiffs contend, nothing.

The plea of prescription invoked by plaintiffs against the state and those who hold under the state can be of no avail to a plaintiff in an action on a tax deed, they never having been in possession. Moreover, plaintiff in a petitory action does not acquire anything by prescription. Lambert v. Craig, 45 La. Ann. 1109, 13 South. 701. And, furthermore, the public domain is not subject to that plea. State v. Buck and Fruit Co., 46 La. Ann. 656, 15 South. 531.

In equity plaintiffs are entitled to the taxes paid by them as adjudicatees at tax sale. They have been tendered to them, and we assume that they will be paid in compliance with the tender made.

We therefore only have to affirm the judgment dismissing plaintiffs' demand, for reasons assigned.

PROVOSTY, J., not having heard the argument, takes no part.

### On Rehearing.
#### (March 30, 1903.)

BLANCHARD, J. This was a petitory action to recover the S. E. ¼ and S. ½ of N. E. ¼ of Section 27, and the N. E. ¼ of N. W. ¼ of Section 35—all in T. 20 N., R. 15 W., Parish of Caddo.

Plaintiffs claim title through tax sales made in the name of the State of Louisiana by the tax collector for non-payment of taxes assessed against the lands in the name of J. G. Richardson.

There were two of such tax sales—one made for the taxes of 1880, the other for the taxes of 1881. Plaintiff, J. B. Slattery, was the purchaser at both sales and his deeds from the tax collector were duly recorded in the conveyance records.

How and from whom Richardson acquired the lands thus assessed to him is not shown.

Plaintiffs' contention is that E. & B. Jacobs (then and afterwards well known merchants of Shreveport) entered the land from the State in 1862 and that patents therefor issued from the State to them. And the theory is advanced that Richardson acquired the title thus obtained by the two Jacobs, and, hence,

the assessment of the property in his name for the years 1880 and 1881.

But no deed from the Jacobs, or any one holding under them, to Richardson was found or produced, nor is it shown that the patents made out in the name of the Jacobs were placed of record, or that the Jacobs ever appeared on the conveyance records of Caddo Parish as the owners, so that the assessor would be justified in assessing the land to them.

Nor does it appear that the same was ever returned for assessment by them, or that it was ever assessed to them, or that they ever claimed to own it.

Equally so, there was nothing of record in the name of Richardson to guide the assessor in assessing the land in his name for taxes, and it is not shown that he ever returned it to that official for assessment, though, from the fact of its assessment in his name (no deed to him being of record) it may legally be presumed that he, or some one for him, returned it for assessment.

Slattery, the tax purchaser, does not appear to have ever returned the land for assessment after his acquisition of the tax title, and notwithstanding the registry of the deed to him in the conveyance records, where it was accessible to the tax assessor, that official does not appear to have assessed it for taxes against Slattery; and the latter, while now claiming ownership of the land, has permitted all the years from 1882 to 1901 (when this suit was filed), twenty years in all, to pass without exercising the plainest and most common, as well as important, of all the duties of ownership of property, to-wit:—the payment of taxes thereon.

It smacks very much of a case where the tax purchaser, considering either that the title he acquired was bad, or else that the land was worthless, abandoned his claim of ownership and that to this is attributable the fact that the tax assessor, with Slattery's title of record before his eyes, failed to assess the property to him.

After twenty years the land suddenly acquired, through the completion of the levee system of Caddo Parish, a large value, and then this suit is brought to assert an ownership seemingly abandoned for twenty years.

If this is not the true situation, it is unfortunate that Slattery did not go upon the

stand as a witness and tell why he failed to pay taxes on the land for twenty years, why he never, in two decades, exercised the least *indicia* of ownership over it.

The land was swamp and overflowed land and was acquired by the State of Louisiana from the General Government under the Swamp Land Act of March 2, 1849, 9 Stat. 352, c. 87.

The contention of the defendants is that it remained part of the public domain of the State until transferred by the State to the Caddo Levee District pursuant to Act No. 74 of 1892, and that the Levee Board sold it to Flournoy and Flournoy to them.

A descriptive list and transfer of lands by the State Land Office to the Caddo Levee District by virtue of Act No. 74 of 1892, duly executed by the Register of the Land Office and recorded, was filed in evidence by defendants.

An examination of this list shows that a part of the land involved herein, to-wit: the N. E. ¼ of the N. W. ¼ of Section 35, T. 20 N., R. 15 W., is not covered by it, or included in it.

In reference to this, plaintiffs' counsel urge that by Section 9 of Act No. 74 of 1892 a deed from the State, through the officials named in the Act, to the Levee Board, and its registry in the conveyance records of Caddo Parish, was necessary to vest title in the Board, and that, therefore, defendants are, themselves, without title to set up to any land omitted from the deed of conveyance from the State land officials to the Levee Board.

While this contention appears to be good, we do not understand that the decree of the lower court, from which plaintiffs appeal, does anything more than reject plaintiffs demand to be recognized as owners of the land.

It does not adjudge defendants to be owners thereof.

Defendants attack the tax sales to plaintiff Slattery as absolute nullities. They aver that Richardson never at any time had any right, title or interest in the land sued for, that the assessment of the same in his name was, therefore, without effect, and that if he had any assessable interest in the land no notice of delinquency and of the proposed sale of the land for non-payment of taxes was given him, and at the sale the property was sold in block in violation of the Constitution, which requires, first, the offering of the least portion thereof which anyone will buy for the taxes, interest and costs due.

There was no proof administered either way—whether there was or was not the giving of the notice required by law to the delinquent tax debtor.

Nor was there any evidence as to whether or not the tax collector, at the sale, offered the least quantity of land before proceeding to offer the whole.

The deeds he executed to the purchaser are silent as to notice and as to the offering of the least quantity. But they substantially comply with sections 44 and 45 of Act No. 77, p. 101, of 1880, which is the statute under which the sale took place.

Section 28 of the statute required the tax collector to certify on the tax rolls that he had served or mailed notice to delinquent tax debtors, and declared that such certificate should make full proof until disproved in a judicial proceeding.

The tax rolls were not offered in evidence and there was no testimony adduced as to whether or not the tax collector had endorsed the certificate on them as required by the statute.

The Constitution of 1879 (article 210) ordained that tax collectors' deeds should be received by courts in evidence as *prima facie* valid sales. The present Constitution repeats this.

This Court, in Land Co. v. Sholars, 105 La. 357, 29 South. 908, giving effect to this requirement of the organic law, declared that tax deeds are to be received in evidence as *prima facie* valid sales, and that it is only where there is evidence adduced by the party attacking the sale sufficient to rebut this *prima facie* character of the deed and to fatally imperil the presumption of regularity which attaches to a tax sale, that there is thrown upon the party who holds under the tax title the burden of sustaining the latter by testimony *aliunde* the deed.

And in Jopling v. Chachere, 107 La. 522, 32 South. 243, the Court announced that mere failure of a tax collector to make, in his deed, recitals of facts which it would have been proper for him to have made, does not render the tax sale an absolute nullity and open, as

such, to collateral attack, nor destroy the good faith of the purchaser in taking possession and holding as owner under it.

We do not understand, therefore, that the omission from these tax deeds of the recital that notice had been given to the tax debtor, or that the tax collector, before offering the property *in globo* had/offered the least quantity of it that any purchaser would buy for the taxes, interest and costs, destroyed the *prima facie* valid character of the deed given it by the Constitution. Cane v. Herndon, 107 La. 591, 32 South. 33.

Neither the Constitution nor the statute of 1880 specifically required these recitals to be made. The law presumes that those things were done which it commanded to be done. "*Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium.*"

It was incumbent upon the defendants to have offered some evidence of failure to give notice to the delinquent tax debtor, and of failure on part of the tax collector to offer at the sale the least quantity of property, before plaintiffs had thrown upon them the burden of sustaining by proof the presumption of the regularity of the proceedings in these particulars.

In other words, the plaintiffs could, primarily, stand on the tax deed.

Plaintiffs filed a plea of estoppel to the effect that the State having, through its officials, assessed the land as belonging to J. G. Richardson, and advertised and sold it as such to plaintiffs, and received the price of the sale, cannot now be heard to deny or contest the validity of the sale, and that this holds good, as well, against defendants and the Caddo Levee Board, who claim under the State.

If it be true, as contended for by defendants, that the land in question pertained to the public domain of the State, and that the State, since its acquisition thereof from the General Government, never parted with title to it until conveyed by donation to the Levee Board, no estoppel results against the State by reason of the fact that the tax assessor erroneously assessed the land to an individual and the tax collector sold it for non-payment of taxes resulting from such assessment.

The State cannot be stripped of its property in any such way.

When the State's tax officials transcend the bounds of their authority no estoppel results against the State from such unauthorized acts. If this were not true, the State could be despoiled of all or much of the public lands by the unwarranted acts of its subordinate functionaries, whose powers are defined and limited by law, the scope of which power persons dealing with such functionaries are bound to know.

Public lands are not subject to taxation, and the situation cannot be altered to the detriment of the State by the mistakes of tax officials in assessing to individuals portions of the public domain.

Herman on Estoppel, p. 832.

As was well said by the learned Judge *a quo*, the proposition that a tax payer may list as his own lands belonging to the State and permit the same to be sold for taxes, and through such means he, or another, acquire a title from the State by equitable estoppel, is certainly novel and startling. To uphold such a contention would be to reward the error or fraud of the tax payer, or permit him, or others, to avail himself or themselves of the mistake or fraud of the assessor.

The purchaser at a tax sale buys at his peril and acquires no title if there be no warrant for the assessment and sale.

In order to show severance of the land from the public domain and divestiture of the State's title, the plaintiffs offered copies of patents issued by the State in 1862 to E. & B. Jacobs for the land in controversy and other lands, which copies were obtained from the State Land Office as part of the depositions, taken in the case, of the Register of the Land Office.

Across the face of these patents were indorsed in red ink these words:—

"This location erroneous, null and void. Warrant No. 4473 returned to locator."

On offering the patents plaintiffs excluded this indorsement.

Whereupon defendants offered in evidence the indorsement. It was received over the objection of plaintiffs, who reserved a bill to the ruling. The ground of the objection was it is not shown who made the indorsement, nor on what evidence it was made, nor is any date given to show when it was made.

Other than this indorsement there is nothing to show that the location of the land was erroneous, nor was there any other evidence

that the patents were null and void, nor that the warrants had been returned to the locators.

The indorsement, received over objection, does not, itself, prove erroneous location, nor nullity of the patents, nor that the warrants were returned to the locators.

The objection leveled against the reception of the indorsement in evidence was good in law. The indorsement is nothing more than a memorandum; it is not signed, nor dated; nor is there any proof as to when, how, by whom, under what circumstances, etc., it was made.

There was no proof that it was in the handwriting of any person who ever held an official position in the State Land Office. There was no evidence that it was an official act.

The point was decided by the Supreme Court of the United States in Branson v. Wirth, 17 Wall. 32–44, 21 L. Ed. 566, and was afterwards reaffirmed on the second trial of the same case in Wirth v. Branson, 98 U. S. 118, 25 L. Ed. 86.

In those cases there was found, just as in this case, across the face of the patent in the Land Office at Washington the following:—

"This patent was issued for the S. E. ¼ instead of the N. E. ¼ as recorded; sent a certificate of that fact to E. B. Clemson at Lebanon, Illinois. See his letter of 19th of May, 1826."

The court below in the first case permitted this indorsement to be offered in evidence. This was held error by the Supreme Court and the judgment was reversed, Mr. Justice Bradley, as the organ of the Court, saying:—

"As to the second—the memorandum made in the margin of the record—it is not known when it was made, except that it must have been made after the 19th of May, 1826, the date of the letter referred to in the memorandum itself, which was eight years after the date of the patent; nor is it known who made it, nor on what evidence it was made. Such a memorandum, being no part of the record itself, cannot be received to contradict the record. It would be a very dangerous precedent to allow it to have that effect. It is not the record of any act of the department, nor of any document entitled to registry in its archives. It is nothing but a memorandum of a third person, and hearsay evidence at best."

110 LA.—4

We hold, therefore, that the patents which issued to E. & B. Jacobs, being public records, were admissible in evidence to show apparent disposal of the land by the State, but that the indorsement found thereon, being no part of the patents, and not partaking of the character of a public record, was not, as it stood, entitled, of itself, to be received in evidence as proof of the cancellation of the patents, or of cancellation of the location of the land described therein, or of the return of the warrants to the locators.

But giving to the patents all the effect claimed for them by plaintiffs, viz.:—severance of the land from the public domain and investing same with the character of private property, they show an apparent title in E. & B. Jacobs—this and nothing more.

This does not help plaintiffs unless they are able to connect the Jacobs patents with the Richardson claim to the land.

As seen, there is nothing in the record showing that Richardson acquired the Jacobs' title, which originated in the patents referred to.

Unless he did, and the land was assessed to him in 1880 and 1881 as the result of such acquisition, the outstanding title, other than that asserted by defendants, if there be one, would appear to be in the Jacobs, or their heirs, and this being so, plaintiffs, unable to show a title good against the world, must fail in this petitory action.

If the title to the land was in E. & B. Jacobs in 1880 and 1881, no legal assessment of it could be made in the name of J. G. Richardson, and no tax sale predicated on such an assessment could carry title to the plaintiffs. At least, such a sale and purchase cannot, in this proceeding, be adjudged as divesting the Jacobs of title, assuming they acquired title by the patents aforesaid, which is the contention of plaintiffs. And of this defendants may avail themselves as a defense against the plaintiffs' demand. Surgi v. Colmer, 22 La. Ann. 20.

The legal situation then is, that if title was out of the State, third persons are shown to have a better title than that claimed by plaintiffs and this better title in others not parties to the suit defendants may invoke to repel plaintiffs' assault. Rowson v. Barbe, 51 La. Ann. 351, 25 South. 139.

The case, then, having failed because of the

insufficiency of plaintiffs' showing of title, it should have ended there and then in a judgment of non-suit instead of one of outright rejection of plaintiffs' demand. Willett v. Andrews, 51 La. Ann. 494, 25 South. 391.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be amended so as to reject plaintiffs' demand as in case of non-suit, and as thus amended the judgment is affirmed, costs of the lower court to be borne by plaintiffs, those of the appeal by defendants and appellees.