(38 South. 170.)

No. 15,374.

SLATTERY et al. v. KELLUM et al.

(Feb. 27, 1905.)

TAXATION—QUIETING TITLE—ACTION BY TAX PURCHASER—PLEADING—POSSESSION—PRESCRIPTION.

1. The purpose of Act No. 101, p. 127, of 1898, is to enable a tax purchaser to quiet his title by bringing suit against the real party or parties in interest; and such suit may be properly brought, though not brought against the person to whom the property was assessed when sold, if such assessment was erroneous, and such person neither has, nor pretends to have, any interest in the title.

2. Neither Act No. 101, p. 127, of 1898, nor the jurisprudence of this court, requires that a tax purchaser suing under said act to quiet his title shall allege possession in himself, or want of possession in the defendant. The fact of possession by the defendant is for him a matter of defense—a shield to be used for his protection against the plea of prescription used by the plaintiff as a weapon.

3. Where the person in whom title is vested at the moment of the sale for taxes has never been in actual possession of the property sold, and no one else is in possession, the tax purchaser acquires civil or constructive possession by virtue of the sale; and, though he may not take actual possession, nevertheless, as between him and the former owner, he may invoke the prescription declared by article 233 of the Constitution of 1898 in support of his title, and his right to do so is not affected by the fact that his possession has been disturbed or wrested from him by other persons, not parties to the litigation, and between whom and the former owner no privity of title exists.

4. Where, in a litigation arising under Act No. 101, p. 127, of 1898, between the former

owner and the holder of a tax title, prima facie valid, there is nothing in the question of possession which takes the case out of the rule of prescription recognized and applied by this court as having been declared by the Constitution, and it is not alleged that there had been a dual assessment, or that the taxes for which the property was sold had been paid, the prescription in favor of the title declared by article 233 of the Constitution will be sustained.

Breaux, C. J., dissenting.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by J. B. Slattery and others against Rosa Kellum and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Wise, Randolph & Rendall, for appellants. Alexander & Wilkinson, for appellees.

## Statement.

MONROE, J. Plaintiffs allege that they acquired at tax sales made at Shreveport by John Lake, tax collector, on June 27, 1881, and August 10, 1882, and registered upon those dates in Books Z and No. 1 of Caddo parish, pp. 166 and 99, respectively, certain land situated in the said parish, which they describe, and which had been patented by the state to E. and B. Jacobs, and assessed and sold as belonging to J. G. Richardson, though the records of the parish show no registry of such patents, nor any transfer of the lands to the said Richardson; that they acquired the property long prior to the death of E. and B. Jacobs, who died, the one about 1896, and the other several years before, leaving a number of heirs, and in the case of E. Jacobs a widow in community; that plaintiffs desire, by means of this suit, to notify the said widow and heirs that their (plaintiffs') title will be confirmed unless they (said parties) within 10 days institute proceedings to annul same. The prayer of the petition is that said widow and heirs be cited, and, after due proceedings, that there be judgment quieting and confirming plaintiffs' said ti-

tles. Exceptions of no cause of action having been filed and overruled, defendants answered, denying that the assessments under which the property had been sold were made in the names of their ancestors, who, as they allege, held patents therefor; denying that notice of the proposed sales was given to the owners, or that the least portion of the property was offered; and especially denying that plaintiffs have ever been in possession of said property, have ever caused the same to be assessed to them, or have ever paid taxes thereon, or exercised any rights of ownership with respect thereto. And thereafter the plaintiffs pleaded the prescription of ten days, under Act No. 101, p. 127, of 1898, and of one, three, five, and ten years.

The evidence in the record shows that the lands in dispute were patented by the state to E. and B. Jacobs in 1862, but that the patents have never been recorded in the parish of Caddo; that for the years 1881 and 1882 said lands were assessed to J. G. Richardson, though no conveyance to him is shown to have been executed, the then assessor testifying that the assessments were so made after and as the result of a conversation with E. Jacobs and J. G. Richardson, from which he concluded that there had been a transfer to Richardson; that they were sold under those assessments, at the times and place as stated in the petition, to J. B. Slattery; and that the tax titles were duly recorded, as thus stated. When the sales mentioned were made, and for perhaps 10 years afterwards, the lands were generally under water, and no one was in actual possession of them. In fact, it does not appear that the patentees, or their heirs, or the plaintiffs, have ever been in possession of, or paid taxes on, or exercised any dominion over them, save in so far as the taxes of 1881 and 1882 were paid by means of the sales to J. B. Slattery, though Mr. Slattery testifies that shortly after his purchase he offered to have the property assessed to him, but that

the assessor declined to assess it in that way, for the reason, as given by him, that the state had never parted with its title. It appears that part of the lands are now in the possession of persons who are not said to be holding under the patentees or the plaintiffs, but how much is so held, and how long it has been thus held, and under what title, has not been shown, otherwise than as appears from a copy of the petition in the matter of J. B. Slattery v. Heilperin & Leonard, offered in evidence on behalf of the plaintiffs, being a petitory action brought by the present plaintiffs in 1901, in which they alleged that the defendants therein were in illegal possession of certain of the tracts which are described in the petition in the present suit, and in which plaintiffs' demands were rejected as in case of nonsuit, on the ground that there appeared to be an outstanding title in the patentees, ancestors of the defendants now before the court. Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139.

### Opinion.

The defendants set up neither title nor possession in themselves; they do not complain of double assessment; they made no attempt to prove that the then owners were not notified of the proposed sale of the property for the taxes of 1881 and 1882, or that the taxes had been paid; and the attempt to prove that the least portion of the property was not offered was unsuccessful. In the case of Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139, supra, it was held that the titles which are now exhibited by the plaintiffs were prima facie valid as to the then defendants; but the court found what appeared to be outstanding titles in the original patentees, the character of which, however, suggested doubts as to whether the state had ever really parted with the land. The plaintiffs were therefore relegated to an action in which that matter might be tested,

and the present proceeding is the result. Referring to the patents which have been mentioned, the court, in the case cited, said:

> "Across the face of these patents were indorsed, in red ink, these words: 'This location erroneous, null and void: Warrant No. 4473 returned to locator.'"

It was, however, held that as the writing was unsigned and undated, as there was no proof that it had been done by any one who had ever held a position in the State Land Office, and as there was no other evidence that the patents were null, or that the warrants had been returned to the locators, the patents were admissible in evidence "to show apparent disposal of the land by the state," but "that the indorsement found thereon, being no part of the patents, and not partaking of the character of a public record, was not, as it stood, entitled, of itself, to be received in evidence in proof of the cancellation of the patents, or of cancellation of the location of the land described therein, or of the return of the warrants to the locator." Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139. In stating that "across the face of these patents were indorsed, in red ink," etc., the court must have been referring to copies of the patents made from the records of the State Land Office, as the original patents issued from that office are in the transcript now before us, and they bear no such writing, but appear to be in all respects regular; nor, beyond the facts that the patentees do not appear to have exercised any rights of ownership with respect to the land; that they apparently acquiesced in its assessment to Richardson; that they remained silent during their lives as to the sale to Slattery; and that their heirs, the present defendants, are not now asserting title in themselves —is there any evidence in the transcript which suggests a doubt as to their validity? For the purposes of the present controversy, we must therefore assume them to have been validly issued, and upon that basis determine

the rights of the parties, within the limits of their pleadings.

It is argued on behalf of the defendants that this action, purporting to have been brought under the authority of Act No. 101, p. 127, of 1898, is not well brought, because the act mentioned contemplates the bringing of suits against those persons only in whose names the property which is made the subject of the litigation was assessed when sold. We do not, however, so understand the act. It is entitled:

"An act to provide a manner of notice and form of proceeding to quiet tax titles, in accordance with article 233 of the Constitution."

And it provides (section 1) that after the lapse of 12 months from the registry of the tax title the holder may bring suit in the ordinary form "against the former proprietor or proprietors of the property," notifying them that unless proceedings to annul are instituted within six months the titles will be confirmed, and authorizing such confirmation if the defendants make default, and (section 3) that "where a title has been quieted by prescription of three years, as set out in said article 233," the purchaser may bring the suit and have it quieted after a delay of ten days, instead of six months.

The purpose of the act, therefore, is to provide for the quieting of tax titles by enabling the holders to litigate, not with persons to whom the property may have been erroneously assessed, and who neither have nor pretend to have any interest in it, but with the former "proprietor or proprietors"; the words "or proprietors" indicating that the suits may be brought against more than one former proprietor, immediate or remote, as their interests may appear, and the idea being to enable the holder to quiet his title as to any or all of them. It is further argued that plaintiffs do not bring themselves within the purview of the act, or of the jurisprudence of this court, in that they do not allege possession in themselves, or want of possession in the defendants. The act in question does not require such allegations, nor does the jurisprudence of this court. It is true that it has been held that the prescription declared by article 233 of the Constitution does not run against an owner who has been allowed to remain in undisturbed possession. Cary v. Cagney, 109 La. 78, 33 South. 89; Boagni v. Pac. Imp. Co., 111 La. 1063, 36 South. 129. But the fact of such possession is a matter of defense—a shield which protects the owner against the plea of prescription, used as a weapon—and there is nothing in the Constitution, the statutes, or the jurisprudence of this court to sustain the proposition that the holder of a tax title prima facie valid does not disclose a cause of action when he sues on such a title.

On the merits, the main question is whether the prescription declared by article 233 of the Constitution can be invoked in support of the title set up by the plaintiff. And this question, we think, must be answered in the affirmative. Neither the defendants nor their ancestors have been in actual possession of the property in dispute, and when the plaintiff J. B. Slattery purchased it, in 1881 and 1882, he acquired a civil or constructive possession which has never been disturbed by them. Ashley Co. v. Bradford, 109 La. 642, 33 South. 634. This being the case, it is entirely apart from any question which is to be here decided that the possession, such as it was, of the plaintiffs, has since then been disturbed or wrested from them by other persons who are not parties to this litigation, and between whom and the defendants no privity of title is said to exist. Considering, then, that as between plaintiffs and defendants there is nothing in the question of possession which takes the case out of the rule of prescription recognized and applied by this court as having been declared by the Constitution, it follows that the judgment appealed from must be affirmed, since

all the other questions raised fall within that rule. Canter v. Williams, 107 La. 77, 31 South. 627.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed at the costs of the appellants.

BREAUX, C. J., dissents.