### HUTTON v. ADKINS et al.
### No. 5830.

Court of Appeal of Louisiana.
Second Circuit.

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Goff & Goff, of Arcadia, for appellants.

R. D. Watkins, of Minden, for appellee.

TALIAFERRO, Judge.

This is a petitory action in which plaintiff sues to be decreed the owner and to recover possession of that part of the W½ of NW¼ of Section 4, west of Caney Creek, Township 18 North, Range 7 East, Bienville Parish, containing 25 acres, more or less.

Mrs. Annie Miller, surviving widow of Elias W. Miller, deceased, his three surviving daughters, to-wit, Mrs. Emmie Miller Adkins, wife of E. H. Adkins, Mrs. Lillian Miller Cates, wife of R. E. Cates, and Mrs. Bessie Miller Floyd, wife of O. G. Floyd, and said E. H. Adkins, were impleaded as defendants. Mrs. Miller died after the suit was filed but before being served. Her said three daughters were substituted as defendants in her stead.

Plaintiff's asserted ownership and her hope of succeeding herein depend upon the chain of title set up by her, to-wit:

1. Patent by the United States unto Thomas C. Scarborough, September 23, 1936;

2. Alleged deed from patentee to John Frazier;

3. Act of donation from John Frazier unto Mrs. Mary Pride Lewis, May 28, 1851;

4. Succession and heirs of Mrs. Mary Pride Lewis (through partition) unto Mrs. Sallie Drake Webb, January 4, 1890; and

5. Succession of Mrs. Sallie Drake Webb unto plaintiff, her sole heir, by judgment of the Twenty-eighth District Court for Webster Parish, May 8, 1913. She alleges that defendants are in possession of the land without any title whatever and refuse to surrender same to her. Plaintiff also sues for $500 alleged to be due her for its illegal use and occupancy.

Defendants admit possession by them of the land and aver it to be legal and under just title. They deny that plaintiff is the owner thereof by and through the chain of title alleged by her. In their original answer these defendants assert that they acquired said land by inheritance as the sole heirs of their father E. W. Miller; and they aver that he acquired title thereto in the following described manner and through the below described instruments:

1. That on October 16, 1888, he purchased from J. J. Vanlandingham the E½ of NE¼ and NE¼ of SE¼ of Section 5, Township 18 North, Range 7 West, in Bienville Parish and immediately assumed actual possession thereof as a home whereon he resided until his death, which occurred in September, 1932;

2. That on July 7, 1869, John Heflin purchased from Minerva K. Hanes "all that portion of land lying west of Caney Creek in Section 4 supposed to contain 100 acres", and the NW¼ of Section 9, NE¼ of Section 8, SE¼ of SE¼ of Section 5, and other lands adjoining, in Township 18 North, Range 7 West, containing in the aggregate 900 acres, more or less, and that Heflin took possession of said lands under said deed and continued in possession of the same until his death, excepting such portions as were sold off by him;

3. That on December 21, 1891, John Heflin sold to said E. W. Miller that part of said land in Section 4, lying west of Caney Creek, but through error the deed only described the SW¼ of Section 4 lying west of said Creek, although the acreage given in the deed "included that part of the NW¼ of Section 4 lying west of the Creek;" and

4. That E. W. Miller took possession under said deed to him of all the land actually described therein and also that

which lies between the 120 acres he acquired from Vanlandingham and Caney Creek and continued such possession until he died; that such possession has been continued by his heirs.

The Miller heirs interpose pleas of prescription of ten and thirty years. G. E. Adkins filed a separate answer. He adopts all the allegations, admissions and denials of his codefendants, and avers that his possession of the land was by authority of his wife and her coheirs.

By amended answer, the Miller heirs allege that Thomas J. Heflin (presumably the same person as John Heflin) acquired from Mrs. M. K. Hanes all said land in Section 4, west of Caney Creek, and that Mrs. Hanes acquired the land from Marx Baer on May 10, 1865; and that Baer acquired same from John L. Lewis on November 11, 1864; that John Heflin died some years ago leaving several heirs (named) of whom Mrs. Annie H. Miller, mother of these defendants, was one; that should it be held that their father, E. W. Miller, did not acquire said land from Heflin, as alleged in their original petition, in such case title to the land was inherited by the Heflin heirs on his death, and that their mother's inherited (one-seventh) interest devolved upon them at her decease. These defendants, in their amended answer, renew the pleas of prescription formerly interposed by them.

After the case was tried and submitted, but before judgment was rendered, plaintiff filed a plea of prescription of ten years acquirendi causa, which was sustained, and defendants have appealed.

Plaintiff did not produce any deed from the patentee, Scarborough, unto John Frazier. But for this break in the title her chain would be complete.

Defendants erred in alleging that E. W. Miller acquired any land west of the creek in Section 4 from John Heflin. All of the deeds constituting the chain of title upon which defendants rely were introduced in evidence. We here give a brief synopsis of them in the order of dates:

1. John Langdon Lewis to Marx Baer, November 11, 1864, conveying,—"All that portion of land lying west of Caney Creek in Section 4, supposed to contain 100 acres," the NW¼ Section 9, NE¼ Section 8, SE¼ of SE¼ of Section 5, and other tracts adjoining, in Township 18 North, Range 7 West, containing 900 acres, in Bienville Parish.

The record discloses no evidence indicating the source of Lewis' title to any of these lands.

2. Marx Baer to Mrs. Minnie K. Hanes, May 10, 1865, conveying same 900 acres.

These two deeds were executed in Caddo Parish and were erroneously recorded therein. They were discovered after the present suit was threatened and then recorded in Bienville Parish.

3. Minnie K. Hanes to John Heflin, July 7, 1869, conveying same tracts composing said 900 acres.

4. John Heflin to John M. Gipson, January 12, 1873, conveying,—"All that portion of land lying west of Caney Creek in SW¼ of Section 4, supposed to contain 95 acres," the NE¼ of Section 9, containing 160 acres, the W½ of SE¼ of Section 9, Township 18 North, Range 7 West.

5. John M. Gipson to Newton Burgess, not dated but recorded July 25, 1874, conveying same description of lands as in deed to Gipson, supra. The acreage is given as being 335.

6. Newton Burgess to Thomas C. Sandefer, April 17, 1875, conveying same land.

7. Thomas C. Sandefer to Elias W. Miller, December 21, 1891, conveying,—"All that portion of land, except 5 acres, lying west of Caney Creek in Southwest Quarter of Section 4, supposed to contain ninety (90) acres, in Township 18, Range 7 West."

It will be noted from the description in the deed from Heflin to Gipson that the land in controversy was therein first omitted. Hence, the alternative demand set up by the Miller heirs in their amended answer. However, it is made quite clear by their testimony that these heirs predicate their alleged title to and ownership of the land alone upon inheritance from their father.

It is quite clear from all the testimony, especially that of defendants themselves, that no part of the land in controversy was physically possessed by anyone until defendant Adkins enclosed a few acres on the southern end of the tract some four or five years ago. In 1912 or 1913, plaintiff sold some merchantable timber from the tract and made another sale of timber therefrom in 1926 to a sawmill company whose plant was located a very short distance north of its north line. This company denuded the land of all of its commercial growth. Miller knew that such was being done and registered no protest. It appears, however, that Miller frequently cut fire wood and made rails from trees on the tract. Before timber became valuable for sawmill purposes, it was not uncommon for anyone in need of a few trees to take them wherever found, especially if owned by a non-resident. When the land became valuable on account of nearby threatened tests for oil, both sides in this suit leased the tract for cash considerations to different persons. But for enhancement in value due to this cause, this suit would probably not have arisen.

It does appear that the NW¼ of Section 4, east of the creek, is now in a state of cultivation. It is probable that some or all of this part of the quarter section was physically possessed by Mrs. Lewis under the donation to her from Frazier in 1851, but the record is silent on the subject.

Miller's clearing and fence line did not extend beyond the east line of his home place in Section 5. The partition of his succession property among his heirs, we infer from a line of questioning of witnesses by plaintiff's counsel, does not include any of the land in dispute. However, the act of partition was not introduced in evidence.

It seems inconceivable that Miller would live for over forty years within sight of this land and not make serious claim thereto, but, on the contrary, allow the timber of value thereon removed, if he believed himself the owner of it or entitled to its possession. The tract lay between his home place in Section 5 and the creek. The convenient and logical thing for him to have done would be to simply extend his clearing and enclosure to the creek had he believed himself entitled to do so.

Defendants contend that the acreage in the deed from Sandefer to their father is sufficient to include the land in controversy and, employing this fact as a premise, argue that it should be held that said tract was conveyed by that deed. The point is not well taken. If the land was erroneously omitted from the deed to Miller, it was likewise erroneously omitted from the three deeds immediately preceding it. The acreage in Section 4 west of the creek is variously stated in the deeds. The record itself does not definitely establish the amount of that acreage.

■ Defendants, as was their father, are without title to the land in question. The possession of a part of it now exer-

cised by Adkins, with their consent, is that of a trespasser against whom plaintiff does not have to establish a perfect title, a title good as against the world.

■ As against a possessor in good faith holding under a title translative of property, a plaintiff in a petitory action, to succeed, must establish title in himself perfect in character. Glover v. Haley et al., 118 La. 649, 43 So. 265. The converse of this principle is equally true.

■ It is axiomatic that in such an action a plaintiff must depend upon the strength of his own title rather than upon the weakness of his adversary's in order to prevail. Code of Practice, Article 44. This implies, of course, that each side has and is asserting separate and distinct titles to the property in controversy. The rule is not so strict and the strength of plaintiff's title need not be so great when the defendant depends upon possession alone, and especially, as in the present case, possession of only a few years.

In Kernan v. Baham et al., 45 La.Ann. 799, 13 So. 155, it is held:

"As against a defendant whose claims in a petitory action are found to rest only on possession, and prescription under it, plaintiff need not show a title perfect in all respects. One apparently good will suffice."

■ The rule applicable to the facts of the present case is tersely declared in Dupre v. Helm, 23 La.Ann. 145, as follows:

"In a petitory action for a tract of land, if the plaintiff shows a title translative of property, and the defendant shows none, the plaintiff will recover."

And in Slattery et al. v. Heilperin & Leonard, 110 La. 86, 34 So. 139, it is said:

"Even against a possessor in good faith, although without legal title, plaintiff in a petitory action must show that he has some title to the property."

The plaintiff here shows title extending back for 87 years.

In the early case of Gravenberg v. Savoie, 8 La.Ann. 499, as reflected from the syllabus, the court laid down the following rule:

"The plaintiff in a petitory action is not bound to show title in himself good against the world. He is only required to produce a title as owner 'causa idonea ad transfer-endum dominium,' to repel the presumption of ownership, resulting from mere possession; and the date of his title ought to be superior to the possession of the defendant."

The rule is likewise stated, perhaps more clearly, in Zeringue v. Williams et al., 15 La.Ann. 76, 77, to-wit:

"Although in a petitory action the plaintiff must recover on the strength of his own title, yet when the defendant has no title at all, he cannot, as a trespasser, take advantage of any defect in the muniments of title shown by the plaintiff; in such a case, a title apparently good, is sufficient to maintain a petitory action."

This case is referred to and quoted from approvingly in Taylor v. Williams, 162 La. 92, 98, 110 So. 100.

■ Plaintiff has been recognized as the sole heir of her mother by a court of competent jurisdiction and sent into possession of all property she owned at the date of her death. Such a judgment, while ex parte, is prima facie evidence of title in plaintiff. Taylor v. Williams, 3 La.App. 772.

Defendants confidently rely upon Bruton v. Braselton et al., two cases, reported in 157 La. 64, 101 So. 873. The facts of these cases are easily differentiated from those of the one at bar. There, as here, plaintiffs were not in the actual possession of the land sued for and were unable to prove a divestiture of title held by the original patentee, but defendants were in physical possession of the land under a title translative of property over ten years old. Here, the defendants have no title whatsoever to the land in controversy.

■ We do not think the plea of prescription filed by plaintiff should have been sustained for the reasons herein stated, but we are of the opinion that plaintiff should have been recognized and is now entitled to be recognized as the owner of the land in controversy by virtue of the chain of title tendered and proven on the trial of the case.

Plaintiff has asked no revision of the judgment rejecting her money demand for the use of the land by Adkins.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.