GLADNEY, Judge.
Roy O. Roy, on December 26, 1961, filed this possessory action against Rosetta Levy Elmer and Jane Levy Shaw, praying that he be maintained in possession of the North Half of the Northeast Quarter, Section 35, Township 19 North, Range 15 West, Caddo Parish, Louisiana. Issue was joined by the named defendants who answered, admitting that Roy and his two children, Robert A. Roy and Mrs. Corinne Roy Kelly, were and had been in corporeal possession of the property since the year 1959, and by reconventional demand the réspond-•ents asserted title to the property in themselves, thereby converting the suit into a -petitory action and judicially confessing the possession of the Roys. The above named •children of Roy were made parties. The Roys then filed an answer to the recon--ventional demand and pleaded therein thirty years acquisitive prescription based •on LSA-Civil Code, Article 3499. The case was tried on its merits and resulted in a judgment favorable to the Levys, recognizing them to be the true and lawful owners •of the eighty acre tract above described, and rejecting the demands of the Roys. The latter have appealed.
The two main issues posed for resolution .are: (1) Whether the Roys have established by a preponderance of the evidence the kind of possession that will sustain their pLja of prescription; and (2) Whether the Levys, being in the position of plaintiffs in the petitory action, have made out their title as required by Art. 3653 of the LSA-Code of Civil Procedure.
This litigation undoubtedly arises from Mr. Roy’s desire to own the land in question that had been in the Levy family for more than eighty years. Roy owned over 1,300 acres of land lying adjacent to the Levy property on all sides thereof, except on the north. By letter dated July 17, 1961, he wrote the Levy tract was “needed to square up our land”. The Levy property caused an indentation or break on the north line of the Roy estate and an extension of Roy’s fences along the north side of the Levy tract would “square up” his property. It is the contention of the Levys that in 1959 or 1960 Mr. Roy moved a fence from the south line of the Levy tract, and constructed it along the north line of said property, thereby enclosing the eighty acre tract under fence along with the remaining property belonging to Mr. Roy. Roy, to the contrary, contends the fence along the north side of the eighty acres in question was constructed about 1927 or before, and has been maintained constantly since that date, during which time he has rented the property for pasturing of cattle and goats.
The testimony of eleven witnesses, in addition to his own, was elicited for the purpose of proving the existence of the fence during the prescriptive period. This testimony was contradicted by that of five witnesses who substantiated the position of the Levys. Although the record does not contain written reasons assigned by the trial judge, his decree implies an acceptance of the witnesses for the Levys. After examination of the record, we agree with the findings of the trial court for much of the testimony presented in behalf of Roy is vague, uncertain and conflicting, and it is evident that many of these witnesses had no definite knowledge of the presence of a fence along the north line of the Levy land during the years in question. This testimony as a whole is unimpressive and we find it fails to establish by a preponderance *211 that Roy’s possession has been continuous and uninterrupted, public and unequivocal, and under the title of owner for more than thirty years as required by LSA-Civil Code, Article 3500. During' the time so involved Charles Mack Flanagan and James Tanner purchased the timber on the tract from the Levys and cut it during the years 1934, 1935 and 1953 without complaint from Roy, who now claims he was in possession as owner at that time. It is beyond our comprehension that Roy would have permitted the removal of this timber from the property had he considered himself an owner thereof
The witnesses in giving testimony favorable to the Levys, testified that there had never been a fence along the north line of the tract in question until 1959 or 1960, at which time Mr. Roy caused the fence along the south line of said property to be moved to the north line and built there, thereby enclosing the Levy property. Fred Ash-ford, Roland B. McNeely and C. E. Goodman impressed us as being disinterested witnesses and familiar with the Levy property. The testimony of these witnesses and other supporting evidence discloses Roy has failed to maintain his prescriptive plea.
Roy has admitted he has never paid any taxes on the property in question, nor does he have any indicia of written title. He must, therefore, be considered as a possessor in bad faith and a trespasser.
As evidence of their title, the Levys produced fourteen instruments which,. in our opinion, deraign a good title originating with a patent from the United States issued to John McCain on March 10, 1851, and concluding with a judgment recognizing Mrs. Rosetta Levy Elmer and Mrs. Jane Levy Shaw as the sole heirs of Moise H. Levy, and as owners of the property in controversy. This chain of title discloses that it has been owned in the Levy family for more than eighty years. The chain of title appears unbroken, but is attacked by counsel for Roy on several grounds which are without merit. Such complaints concern deeds that have been recorded in the Parish of Caddo for more than thirty years. These instruments, therefore, are self-proving under the “Ancient Documents Act”, LSA-R.S. 13:3728-13:3731, inclusive.
An objection is made to an instrument executed by Nettie Herold Hofheimer and Joseph K. Herold. Counsel calls this a quitclaim deed, but in fact, it is an act of disclaimer of title and the appearers acknowledge their father, M. M. Kaufmann, had purchased the property for the use and benefit of his daughter, Mrs. Mathilde Levy, and declarers had no interest therein.
Still further objection was made that some of the instruments in the Levy chain of title were not in authentic form. The objection is without merit for LSA-Civil Code Art. 2440 prescribes that sales of immovables may be made by authentic act or under private signature and Art. 2235 provides :
“An act which is not authentic, through the incompetence or the incapacity of the officer, or through a defect of form, avails as a private writing, if it be signed by the parties.”
We have endeavored to answer the attacks on the validity of the Levy title, although Roy, being a possessor in bad faith and a trespasser, is without right to take advantage of any defects in muniments of title. Thus, it was said in Zeringue v. Williams et al., 15 La.Ann. 76 (1860):
“Although it be true that the plaintiff, in a petitory action, must succeed on the strength of his own title, and not on the weakness of his adversary’s yet, when the latter has no title at all, he cannot, as a trespasser take advantage of any defect in the former’s muni-ments of title. In such cases a title apparently good, is all that is required to maintain the petitory action.”
The foregoing citation was quoted and approved in Taylor v. Williams, 162 La. 92, *212 98, 110 So. 100, 102 (1926) and Hutton v. Adkins, La.App., 186 So. 908, 911 (2d Cir. 1939). In Hutton v. Adkins the defendant Adkins was possessing as a trespasser and plaintiff brought a petitory action to have his title recognized and possession restored to him. Judge Taliaferro, as the organ of this court, set forth the following legal principles which seem to us appropriate in the instant case:
“As against a possessor in good faith holding under a title translative of property, a plaintiff in a petitory action, to succeed, must establish title in himself perfect in character. Glover v. Haley et al., 118 La. 649, 43 So. 265. The converse of this principle is equally true.
“It is axiomatic that in such an action a plaintiff must depend upon the strength of his own title rather than upon the weakness of his adversary’s in order to prevail. Code of Practice, Article 44. This implies, of course, that each side has and is asserting separate and distinct titles to the property in controversy. The rule is not so strict and the strength of plaintiff’s title need not be so great when the defendant depends upon possession alone, and especially,, as in the present case, possession of only a few years.
“In Kernan v. Baham et al., 45 La.Ann. 799, 13 So. 155, it is held:
“ ‘As against a defendant whose claims in a petitory action are found to rest only on possession, and prescription under it, plaintiff need not show a title perfect in all re-pects. One apparently good will suffice.’
“The rule applicable to the facts of the present case is tersely declared in Dupre v. Helm, 23 La.Ann. 145, as follows :
“ ‘In a petitory action for a tract of land, if the plaintiff shows a title translative of property, and the defendant shows none, the plaintiff will recover.’
“And in Slattery et al. v. Heilperin & Leonard, 110 La. 86, 34 So. 139, it is said:
“ ‘Even against a possessor in good faith, although without legal title, plaintiff in a petitory action must show that he has some title to the property.’
“The plaintiff here shows title extending back for 87 years.
“In the early case of Gravenberg v. Savoie, 8 La.Ann. 499, as reflected from the syllabus, the court laid down the following rule:
“ ‘The plaintiff in a petitory action is not bound to show title in himself good against the world. He is only required to produce a title as owner “cause idónea ad transfer-endum dominium,” to repel the presumption of ownership, resulting from mere possession; and the date of his title ought to be superior to the possession of the defendant.’
******
“Plaintiff has been recognized as the sole heir of her mother by a court of competent jurisdiction and sent into possession of all property she owned at the date of her death. Such a judgment, while ex parte, is prima facie evidence of title in plaintiff. Taylor v. Williams, 3 La.App. 772.”
The foregoing legal principles are applicable to the evidence presented in this case, although there appears to be no flaw in the title of the Levys. The judgment should be affirmed.
Accordingly, it is ordered that the plaintiff’s demand be rejected.
It is further ordered, adjudged and decreed that there be judgment herein in-favor of Mrs. Rosetta Levy Elmer and Mrs. Jane Levy Shaw and against R. O. *213 "Roy, Robert A. Roy and Mrs. Corinne Roy ."Kelly, recognizing Mrs. Rosetta Levy Elmer and Mrs. Jane Levy Shaw as the 'true and lawful owners of the North Half ■(N Yz) of the Northeast Quarter (NE Y) -of Section 35, Township 19 North, Range 15 West, Caddo Parish, Louisiana.
It is further ordered, adjudged and decreed that R. O. Roy, Robert A. Roy and Mrs. Corinne Roy Kelly deliver possession •of said property, and pay all costs of this .suit.