Statement.
MONROE, J.
This is a sequel of the suits of Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139, and Slattery v. Kellum, 114 La. 282, 38 South. 170, in the first mentioned of which (it having been a petitory action for the recovery of certain lands, for which, with other lands, patents had issued to E. & B. Jacobs, and which plaintiffs had, thereafter, acquired under sales for taxes assessed to J. G. Richardson), plaintiffs were nonsuited, on the ground that there appeared to be an outstanding title in the patentees; and, in the last mentioned of which, plaintiffs asserted their tax titles, and obtained a judgment quieting and confirming the same, as against the heirs (as also against the widow of one) of the patentees. In the present proceeding, in which four suits are consolidated, plaintiffs are asserting their tax titles as against the transferees of Heilperin & Leonard, and other persons holding possession of the following described tracts, viz.:
S. W. 1/4 of section 30, and W. 1/2 and S. B. 1/4 of S. W. 1/4 of section 31; and S. W. 1/4 and W. .1/2 of S. B. 1/4 section. 32, township 20 N., range 14 W.; and S. E. 1/4 and S. 1/2 of N. E. 1/4 section 27; and N. B. 1/4 of N. W. 1/4 section 35; and E. 1/2 of N. B. 1/4 and N. B. 1/4 of S. E. 1/4 section 36, township 20 N., range 15 W.— all in the parish of Caddo.
The grounds of defense are that, when the tax sales relied on were made, the lands had not been segregated from the public domain, but belonged to the United States government, and hence could not legally have been assessed to J. G. Richardson or sold for taxes assessed in his name; that, if any patents had issued therefor, they had been canceled with the consent of the patentees; that the plaintiffs, after their alleged purchase, abandoned the lands and paid no taxes on them; and that the state of Louisiana acquired them, as swamp or overflowed lands, from the United States, and conveyed them to the board of commissioners of the Caddo Levee district, from which board defendants, through mesne conveyances, acquired them, in good faith; that defendants and their immediate authors succeeded the levee board in the actual possession of said lands, and have paid taxes on and improved them, and made them valuable, all to the knowledge of the plaintiffs, who, by their silence and inaction, acquiesced therein; and that plaintiffs are thereby estopped to assert the claim which they now set up. Defendants call their vendors in warranty and pray that, in the event there should be judgment against them, on the question of title, they be allowed, as possessors in good faith, to recover the price paid for the property and the amounts disbursed by them in taxes and improvements. The questions of the disbursements and of the revenues have, however, been pretermitted, by consent; and-the question of title is the only one with which the court is now called upon to deal. The facts of the case are substantially as follows, to wit: Some time pl-ior to February 26, Í862, E. & B. Jacobs acquired internal improvement warrants Nos. 543%, 4,472, 4,473, 4,480%, 4,480%, and 4,480%, with which they located the lands here claimed, together with other lands, and obtained therefor patents Nos. 11,342, 11,343, 11,344, 11,347, 11,348, 11,686, and 11,687. The warrants in question were issued against a grant of 500,000 acres of land made by the act of Congress of September 4, 1841, in aid of internal improvements. The warrants, certificates of *553 location, and assignments, read, mutatis mutandis, as follows:
“Internal improvement Land Warrant No. ’543%. Land Office of the State of Louisiana. To all whom, it may concern: Be it known that, in pursuance of an act of the General Assembly of the state of Louisiana approved 25th March, 1844, we, B. Haralson, register of the land office, and G. E. Greneaux, Treasurer of the State and receiver of the land office, did cause to be sold, at the city of Baton Rouge, on the 17th day of May, 1856, a warrant, No. 543%, for 160 acres of land donated to the state of Louisiana, as internal improvement land, by the act of Congress of 4th September 1841, and to be disposed of under the provisions of said act of the General Assembly, when Adolph Wiltz, assignee of W. S. Paradise, became the purchaser thereof for the sum of $200, which was paid to the receiver aforesaid. Now, therefore, we do hereby sell and warrant to the said Adolph Wiltz and hereby authorize him, his heirs and assigns, to locate said warrant upon any of the public lands subject to entry within the state of Louisiana under the aforesaid act of Congress. In faith whereof we have hereunto subscribed our names, and affixed the seals of our respective offices at the city of Baton Rouge this 17th day of May, 1856.
“[Signed] B. Haralson, Register, ■
“[Seal.] C. E. Greneaux, State Treasurer. _
_ “Por value received, I transfer the within warrant, No. 543%, to Messrs. E. & B. Jacobs or order.
“[Signed] A. Wiltz.
“E. Wicomeile.
“V. Durrive.”
“Land Office, Natchitoches, La., February 26, 1862.
“I hereby certify that E. & B. Jacobs, of the Parish of Caddo, have this day located the Internal Improvement Land Warrant, No. 543%, issued in favor of Adolph Wiltz, for 160 acres, under date of the 17th day of May, 1856, on the following lands to wit: The W. % of the S. W. % of section 31, township 20 N., range 14 W., containing 70.64 acres; and N. E. % of S. E. %, and E. % of N. E. % of section 36, township 20 N., range 15 W., containing, in all, 174.59 acres; making an excess of 14.59 acres, . which has been paid in cash, as per certificate R. & R. No. 17,872.
“[Signed] S. M. Hyams, Register.
“14 59 “ 3 65
“$18 24”
Warrant No. 4,472 was sold to George C. Lawrason and bears a written transfer, signed by him, to E. & B. Jacobs, by whom the lands were located. It also shows the Indorsement, in blank, “J. G. Richardson, Agent,” but there is nothing upon the face, or back, of the instrument which connects this indorsement with E. & B. Jacobs, or which shows that they ever parted with the interest acquired by them from Lawrason, and the same is true of warrant No. 4,480% save that the latter was issued to Judson & Co., and the transfer to E. & B. Jacobs does not appear, on the copy filed in evidence, to have been signed by them. No copies of the other warrants have been offered, but it is admitted that each of them, like the warrants of which copies have been filed in evidence (the originals being in the Land Office in Washington), has the following legend inscribed across the face of the certificate of location indorsed upon or attached to it, to wit:
“State Land Office N. O. Nov. 27, 1877. This location canceled and warrant returned.
“[Signed] J. W. Graham, Register.”
And upon the record, or copy (as retained in the state land office) of each of the patents issued in connection with said warrants, there appears the inscription, in red ink but without date or signature:
“This location erroneous, null and void. Warrant No. 543%” (or other number) “returned to locator.”
It further appears that upon November 27, 1877, the warrants in question were used to locate other lands; that the locations thus effected were approved by the Secretary of the Interior on May 15, 1878, and that, upon June 6, 1878, patents for the lands so located were issued to Valery Ledoux.
Over the objection of plaintiffs, the testimony of J. G. Richardson and J. R. Bres was introduced upon the trial of the case, in explanation of the transactions above referred to. Richardson testifies that he learned that the entries made by E. & B. Jacobs had been canceled, for the reason that the locations had never been approved by the United States; and the witness proceeds:
*555 “I, being in New Orleans at the time, and understanding from W. J. McCullough that these warrants could be purchased, corresponded with E. & B. Jacobs, who sold me the warrants for $1,000, cash, and directed me to pay that amount to Messrs. Schmidt & Ziegler, of New Orleans, La., which I, accordingly, did. E. & B. Jacobs then sent me an order on the register of the state land office, then at New Orleans, La., directing that officer who had charge of the warrants at the time to deliver them to me, which he did.”
The witness further testifies that he sold the warrants to a gentleman whose name he gives, and who is now living in this city, and who probably sold them to the patentee, Valery Ledo.ux. This testimony is corroborated by the books of Schmidt & Ziegler, and by their receipt to Rjchardson showing that, on November 27, 1877, they received from him, for account of E. & B. Jacobs, the sum of $1,000. It is further corroborated by the testimony of J. R. Bres, who states that in November, 1877, he was employed as clerk in the state land office, and, practically, had charge of the office; that W. J. McCullough, who occupied the position of state land commissioner during the war, was of opinion that the Jacobs entries were null, and that the lands covered by them were the property of the United States, and that J. W. Graham, the register in 1877, acquiesced in that view and authorized the cancellation of said entries; that the inscriptions in red ink on the records of the patents, were made by the witness under that authorization, and that the warrants in question were delivered “on written authority,” to the best of his recollection, to J. G. Richardson. The witness further says:
“I have recently made an examination of the records of the said land office, but have been unable to find the written request for the cancellation and return of the warrants. This examination was thorough.”
Recurring to the testimony of Richardson, that witness, speaking of the lands in question, says:
“I never owned the lands or any other lands in Caddo parish, nor did I authorize any assessmeat thereof to me, or in my name. I did, about 1880, in answer to a letter from the-assessor for Caddo parish [my recollection is that it was E. A. Leonard], advise him that I had no interest in the lands described in the interrogatory, and other lands originally located by E. & B. Jacobs, but that I had pur- ■ chased the land warrants, having learned that the location by Jacobs had been canceled, for the lands inquired about.”
E. A. Leonard, examined as a witness, testifies that he was the assessor'from 1877 to 1884; that in 1880 and 1881 the lands were assessed to J. G. Richardson. Being asked:
“How did you happen to assess them to him?”
He replied:
“I assessed them at the request of some one, but I do not remember who it was. I had several conversations with both Mr. Richardson and Mr. Jacobs in regard to the matter. Q. Had Mr. Richardson or Mr. Jacobs set up any claim to these lands? A. I am pretty sure that Richardson said that he had no claim to-them; possibly after the assessment was made. * * * Q. How long have these defendants been clearing up and improving these lands? [Objection and ruling.] A. Must have been in 1896 or 1897, along there.”
It is shown that J. B. Slattery in 1881 and 1882 acquired certain of the lands in controversy at sales made in those years for the state and parish taxes of 1880 and 1881 assessed to J. G. Richardson, but it does not appear that he or his transferees have ever been in possession of any of the lands so acquired, or have paid any taxes' thereon. Upon the other hand, it is admitted that the same lands were thereafter transferred by the state to the board of commissioners of the Gaddo levee district, and it is shown that, of the tracts included in plaintiffs’ tax titles (and here claimed), the-levee board has made sales as follows, to wit:
S. E. % and S. % of N. E. % of section 27; and N. E. 14 of N. W. % of section 35, township 20 N., range 15 W., to J. P.. Flournoy, by act of date December 24, 1900; S. W. % of section 30, township 20* N., range 14 W., to J. L. Douglas, by act of *557 date January 3, 1901; W. % and S. E. % of S. W. % of section 31, township 20 N„ range 14 W., to J. C. Dickson, by act of date November 5, 1896; S. W. % and W. % of S. E. 14 of section 32, township 20 N., range 14 W.; and E. % of N. E. 14 and N. E. 14 of S. E. 14 of section 36, township 20 N., range 15 W., to Rainey Carter, by act of date May 21, 1895.
It is also shown that the purchasers named, or their transferees, have been in actual possession of the lands thus described since the dates of their respective purchases, and that they have paid the taxes thereon, and have expended large sums of money in reclaiming and improving the lands.
Opinion.
It is established jurisprudence that the title of the state of Louisiana to lands granted for internal improvements (under the act of Congress of 1841), and as swamp and overflowed lands (under the acts of 1849 and 1850), vested in fee simple only upon the approval by the Department of the Interior (or Treasury) of the selections thereof as made by the state, or, perhaps it would be better to say, upon the identification by the Secretary of the Interior of the lands selected. Foley v. Harrison, 5 La. Ann. 75, also reported in 15 How. (U. S.) 433, 14 L. Ed. 761; McNee v. Donahue, 142 U. S. 587, 12 Sup. Ct. 211, 35 L. Ed. 1122; 26 A. & E. Ency. of Law (2d Ed.) p. 339; Rogers Locomotive Works v. American Emigrant Co., 164 U. S. 559, 17 Sup. Ct. 188, 41 L. Ed. 552. In the ease at bar, it seems to be conceded that the selection of the lands in controversy, as made by the state in patenting them to E. & B. Jacobs, agreeably to the laws relating to lands granted for internal improvements, was never approved by the Secretary of the Interior, or Treasury, but that the title of the state thereto was (at some time subsequent to the issuance of the patents to E. & B. Jacobs) perfected in accordance with the provisions of the swamp land grants of 1849 and 1850, from which it would probably follow that, as E'. & B. Jacobs had done all that was required by the state in order to obtain its title, it would be a matter of no consequence, as between them and the state, whether that title, as perfected, was acquired before or after the issuance of the patents to them, or whether it was perfected under the act of 1841 or the acts of 1849 and 1850. In fact, it may be said that, for the purposes of this case, it is immaterial whether or when the title of the state was perfected, since plaintiffs and defendants are alike claiming under that title, and are litigating their respective claims to such title as the state may have conveyed to them. Considering the matter from the point of view thus stated, there is nothing in the record to show that the. lands in question were not legally entered by E. & B. Jacobs, with their internal' improvement warrants; and, so far as we can see, the register of the state land office would have been without authority, of his own motion, to cancel those entries, especially after the issuance of the patents. But it is evident that if B. & B. Jacobs, after having made their entries, considered that they should be canceled, and were allowed to withdraw their warrants and use them, or authorize them to be used, for the entry of other lands, they could not now be heard asserting title to the lands originally entered; for, in that ease, the court would be obliged to hold that the original entries had been abandoned, and that the lands so entered had reverted to the state, and, in the case presented, that no valid sale of such lands could thereafter have been made for taxes. The important question, then, is, has it been shown by competent evidence, admissible against the defendants now before the court, that the original entries made by E. & B. Jacobs were *559 canceled with their consent, and that the warrants with which those entries were made were, with their consent, used for the entering of other lands?
That the warrants were withdrawn from the land office after the original entries were made, and that other lands have been entered with them, that the latter entries have been approved by the authorities at Washington, and that the state has issued patents for the lands so entered, are facts which are proved beyond dispute, and by the best of written evidence. If patent 11,342 shows that, with internal improvement warrant No. 543 %, E. & B. Jacobs located W. y> of S. W. % of section 31, township 20 N., range 14 W., and N. E. % of S. E. % and E. y¡ of N. E. of section 36, township 20 N., range 15 W., so, patent No. 2,036 shows that, with the same warrant, Yalery Ledoux subsequently located the N. E. % of section 24, township 11 S., range 5 W., and the same is true as to the other warranty, from which it follows either that a gross fraud has been perpetrated by the officers of the state land office, in reissuing warrants which had served the purpose for which they were originally issued, and were dead, or else that, without' fraud, though irregularly, the original entries were canceled with the consent of the parties in interest, and the warrants returned to and relocated by them or by their authority.
It is said that the mere fact that the warrants upon which the patents now held by the heirs of E. & B. Jacobs were issued were subsequently used for the location of other lands did not, of itself, destroy the titles represented by those patents, and that nothing short of the written declaration of the patentee of abandonment or retrocession can be held to have imoduced that effect.
We are unable to concede the correctness of the proposition as stated, since in order to do so we should have to be prepared to hold that if E. & B. Jacobs were before the court as the holders of two sets of patents, issued to them upon the same warrants, but for different lands, both sets of patents would have to be maintained, though there might be an abundance of oral, but no written, evidence, to show that the entries constituting the basis of one set had been canceled with the consent of the holders. In such case, we are of opinion that the missing link in the chain of written evidence would be sufficiently supplied by the fact, evidenced by the warrants and the patents themselves, that the former had been used by their holders as a means of obtaining twice as much land as was called for by them. And. since the defendants are not claiming under the original patents, such a ruling might, perhaps, be made with regard to them. It is not, however, necessary, for the purposes of the case at bar, that we should go that far, since the necessary link is here supplied by proof of the contents of a written instrument which has been merely lost or destroyed. Richardson, it will be remembered, obtained from E. & B. Jacobs a written order directing the register to deliver to him the warrants in question, and Bres testifies that the warrants “were delivered on written authority,” and that “after thorough search he had been unable to find the written request for the cancellation and return of the warrants.” We have, therefore, the equivalent of E. & B. Jacobs’ consent, in writing, to the cancellation of the entries, and the equivalent of their receipt, in writing, for the warrants, which, unless they were acting in fraudulent collusion with the register of the land office, could have been delivered to them only upon their consenting to such cancellation. It is true that the warrants ought not to have been delivered even with that consent, or, certainly, not until the original patents had been surrendered and canceled, and that the whole proceeding, including the *561 subsequent use of the warrants, apparently, without any written transfer having been indorsed on them by E. & B. Jacobs, was Irregular; but the testimony and circumstances, taken together, leave no doubt upon -our minds that the warrants were withdrawn and subsequently used by the written authority (though not indorsed upon them) of E. & B. Jacobs; a fact which is suffiieent for the purposes of the. case, since, as we have before remarked, by the cancellation •of the entries made under those warrants, the title to the lands which had been entered became again vested in the state, and could not thereafter have been devested by the sales for taxes upon which the plaintiffs •rely.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be •affirmed, at the cost of the appellants.
LAND, J., recused.