privileged. Clement Brothers v. Creditors, 37 La. Ann. 693.

A question of privilege was invoked in Gardemal v. McWilliams, 43 La. Ann. 457, 9 South. 106, 26 Am. St. Rep. 195. It was sustained.

The administration of justice, it was said in Terry v. Fellows, 21 La. Ann. 376, requires it.

There are other decisions not directly in point in which the question of "privilege" was considered; as for instance, in one case, the defendant had taken the oath in a judicial proceeding. The court substantially said that, as malice had not been shown, there was no ground for a criminal prosecution for perjury. Wamack v. Kemp, 6 Mart. (N. S.) 477.

Another decision, although not directly pertinent, has bearing. The court held in substance that the occasion presented the inference of malice. The step taken was an exigency in the cause of judicial proceedings. See, also, upon the subject Allen, Nugent & Company Case, 32 La. Ann. 511; Morancy v. Clare, 6 La. Ann. 178; Pellenz v. Bullerdieck, 13 La. Ann. 274; Osborne v. Moore, 12 La. Ann. 714; Grant v. Deuel, 3 Rob. 17, 38 Am. Dec. 228; Escurix v. Daboval, 13 La. 89; Ryder v. Adams, 5 La. 318; Maloney v. Doane, 15 La. 278, 35 Am. Dec. 204.

We do not feel inclined to set aside the well-established rule, although it may work hardship in particular cases.

A vast field of litigation would be opened should this court hold that nothing is privileged in judicial proceedings.

We do not wish to be understood as belittling the complaint of any one.

But there are charges of a personal character which must be left to the protection which may be found in the moral law or responsive public opinion. They cannot be remedied in a civil suit for damages.

It is therefore ordered, adjudged, and decreed that the judgment be, and it is, affirmed.

PROVOSTY, J., concurs in the decree.

---

(40 South. 789.)

No. 15,808.

RICHARD et al. v. PERRODIN.

(Feb. 26, 1906. Rehearing Denied March 26, 1906.)

1. PUBLIC LANDS—SPANISH GRANT.
    The grant was intended to inure to the benefit of future generations as well as to the living grantees. The evidence and circumstances attending the issuance of the grant lead to that one inference.

2. SAME—INHABITANTS OF BELLEVUE WERE BENEFICIARIES.
    There are inhabitants of Bellevue at this date, as there were at the date of the grant. And to this date they availed themselves of the right granted.

3. SAME—SURVEY IN 1806.
    The land subject to the right was surveyed and laid out. Swamp lands in 1797, the date of the grant, may not be swamp lands at this date. It is not possible at this date to determine the area there was in swamp at the date of the grant. It has features of swamp land. It contains swamps. It is subject to overflow in heavy rains, and it has been overflowed by the waters of the river.

4. SAME—BENEFICIARIES.
    Defendant is not one of the inhabitants of Bellevue, and is therefore without right under the concession.

5. SAME—WHAT CONSTITUTES.
    The soil forms part of the public domain of the United States government. The land was sold at tax sale in the name of the inhabitants of Bellevue. They were not its owners. It could not be thus taken from the public domain.

6. TAXATION—TAX SALE—PUBLIC LANDS.
    The tax title is void.

7. SAME—TAX DEEDS—REPLICATION.
    The answer is open to attack without special plea. Replication is possible by proof.

8. SAME—PRESCRIPTION—CURATIVE ACT.
    The title claimed was unaffected by the curative article 233 of the Constitution of 1898.

RICHARD v. PERRODIN.

9. SAME—TIMBER RIGHT.

The soil could not be thus sold. The sale could not have the effect of including, as property bought, the timber right on the land.

10. COSTS—APPEAL—GOOD FAITH OF DEFENDANT—ATTORNEY'S FEES.

The question of the good faith of defendant is made one of the issues on appeal, in the answer to the appeal in which amendment of the judgment is asked. The bad faith charged is not sustained. The judgment will therefore not be amended to allow attorney's fee.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Action by Alexandre Richard and others against Humbert Perrodin. Judgment for plaintiffs, and defendant appeals. Affirmed.

William Joel Sandoz, for appellant. Kenneth Baillio, for appellees.

BREAUX, C. J. Plaintiffs are owners of lands in the Bellevue section of the parish of St. Landry, and in this section they live and have their homes.

They allege that they have a right to cut timber on lands granted by the Spanish government to a number of colonists.

They complain of the acts of defendant, and charge that he is a trespasser upon their right. That he, although not entitled to a similar right, is cutting down timber on the land thus donated.

They ask that their right to cut timber be recognized, and that he be restrained by injunction from committing further damage.

They sue in their own name, and for the benefit of all other persons having a right to cut timber upon the land donated.

Years ago, Louis Lavergne, Charles Comeau, Joseph Bourque, Siliere Sonnier, Cyril Thibodeau, in their own names and representing all the inhabitants of Bellevue, petitioned the Spanish government and averred that they had lost a suit, and in consequence lost the right they had to cut wood for their use on land near Bellevue, and they stated that they would have to abandon their farms unless they succeeded in obtaining other timber. That another swamp was adjacent to the swamp they had lost in their suit. That as no one would be likely to claim it, and as it belonged to his majesty, they prayed for a right which was afterward granted to them by Baron Carondelet.

He issued the order to the deputy surveyor at Opelousas to lay out the 40 arpents of swamp land solicited for the use of the inhabitants of the Bellevue district. And the governor further stated that, in order to avoid disputes and such suits as the inhabitants had just had with one Duplesis and lost, no grant would ever be issued in favor of any one to this swamp.

The grant was complete enough, and the inhabitants from its date exercised the right conferred. That is, to use a French expression common to this day, among practical and industrious farmers: Le droit de hache.

The land granted, subject to the use before mentioned, passed to the United States government, which has always sought to carry out the terms of the treaty touching private rights which had been acquired by the colonists. A commission was appointed in order to pass upon and approve all legitimate rights acquired.

In 1816, this commission specially considered this claim and held that the grant conferred on the inhabitants of Bellevue a right in common to use the cypress on the swamp land within the extent of 40 arpents front, described in the requette accompanying the act of concession. The committee, among other things, declared that in making the concession of the right it was the intention to reserve to the crown of Spain the title to the soil. The committee believed that under the government of Spain the inhabitants of Bellevue would have enjoyed in common the right before mentioned. They, after going over other details, confirmed the right in

said inhabitants, "so far as it can be done without relinquishment of the right to the soil."

In the year 1806, William Darby surveyed the concession consisting of about 1,317 acres. The commissioners, referring to this survey, said that the lines appeared to have been run in such manner as to avoid interference with private claims, and that, in addition to the swamp lands, a portion of high arable land was understood to have been included in the survey, though not indicated in the plat. The commissioners said that in case the swamp land was less than the quantity petitioned for, the privilege or right to which they thought the claimants were entitled "must be confined to the use of the timber growing on the land," denominated swamp, and that it was not to be extended to timber growing on adjacent arable land.

The tract of land in question was resurveyed recently by W. B. Roberts, surveyor; the old lines were reinstated. The tract is numbered 53.

Defendant appeared in the first place, by way of exception, setting up that plaintiffs had no right of action and no cause of action. And his answer substantially was that the grant of the right was not made to include future generations of Bellevue as grantees. That it was limited to those living at the time of the grant. He further, in substance, answered that he had not cut down any timber on the swamp land included within the limits of the concession; and he averred his good faith.

The exceptions before mentioned and the answer will be considered together.

We will state at the beginning of the discussion that no difficult task presents itself in identifying the locus of the grant. The surveyor who recently made the survey found it, and in his plat has reproduced the lines.

His survey and other testimony show that it is not high arable land as compared to the adjacent lands. Much of it is low land; some of it low and swampy. Nonetheless, part of it is cultivated and crops are made. Only a part of the land is swamp at this time. There are some sloughs running through it; low places, and here and there knolls and ridges. The quantity of swamp relatively to land that is not swamp greatly differs in the estimates of the different witnesses. It ranges from one-fourth swamp, even less, to a considerably larger area.

There are trees on the land, and they are the bone of contention. It must be said that the land itself has value.

We assert as a proposition that the Spanish government had made a sufficiently valid grant to be legally confirmed as it was. But if the present claimers, for any reason, should not be entitled to the right to cut timber on the land, then the timber belongs to the government and not to persons. It follows, that if we should decide that plaintiffs are without right we would not be more successful in finding a right in defendant to stand in judgment.

We deem it proper, nevertheless, to take up the different grounds urged by defendant that are before us for decision. The issues are presented in such a shape, by the parties to the suit, that we think that they should be considered by us, although the defendant would be without right were we to decide against plaintiff's demand.

Originally, and afterward in the confirmation proceeding, it was intended that the right before mentioned should go to the inhabitants of Bellevue in perpetuity. It was made to all the inhabitants of the section identified by the beautiful name of "Bellevue." These inhabitants owned prairie land that was attractive and fertile. They doubtless desired to remain and assist in the growth of the colony, but could not remain if they

did not succeed in finding wood to improve their farms, and fuel to warm their firesides. No expression was used in any of the papers connected with the title showing, that it was the intention of any of the authorities to restrict the grant. It was evidently intended for it to pass to the inhabitants of Bellevue from generation to generation.

The contention of the learned counsel for defendant in the second place is that the words of the grant "to the inhabitants of Bellevue" do not designate any particular inhabitants, as Bellevue is undefined and not identifiable; that it is not definitely known nor susceptible to identification.

There may be something in this contention. But after some reflection, it occurs to us that the officers in authority, by whom the grant was issued, and those by whom it was confirmed, intended to make beneficiaries the inhabitants of a known locality, that is, the inhabitants of Bellevue.

There has been no serious attempt made to prove that the plaintiffs, and those whom they represent, are not the inhabitants of Bellevue, and that they cannot identify the locality.

Even if there are no beneficiaries to be found, the defendant is without right to claim ownership of the land. We infer, after having patiently turned page after page of the record, and weighed the testimony, that a surveyor, under the direction and advice of the court, would meet no great difficulty in establishing the lines under the terms of the grant.

With reference to another ground of defense, i. e., that trees in the swamp only were meant, it is true that the board of commissioners said in their report, confirming the right, that the Darby survey made in 1806, in their opinion, included other than swamp lands. They said, further, that they wished it to be understood that they were passing on the right to trees in the swamps;

that the title did not extend to timber growing on adjacent arable land.

Defendant's contention on this point is that much of the land, over two-thirds, is not swamp land. Granted that it is the condition at this time. But it remains as a fact that after these many years it is not easy to determine that it was not all swamp land at the date of the grant. Over 100 years have elapsed since the concession was made. In that time changes have taken place in lands and their level.

It is to the knowledge of every one that lands that were within date comparatively recent impassable swamps are now in a high state of cultivation. Vegetation dying from year to year, drainage, water, are elements that contribute to raise low places. The process is slow but constant. If only one line be added to the soil each year, in the course of over a hundred years, a hundred lines would be enough to change swamp lands to low cultivatable lands.

We mention, by way of illustration, that if the grant originally had included the fee simple to the swamp it would be very difficult to recover it from the owner at this time, on the ground that it was not swamp land or that only a part of it was swamp land.

From defendant's point of view, the conclusion at which he arrives is legal enough, viz.: he has never cut down timber in the swamp of the section in question; the far larger portion of the area at this day is not swamp; the right of plaintiffs is to cut timber in the swamp.

But we are constrained to take a different view of the premises above stated, which necessarily leads to a different conclusion. The grant cannot be considered of recent date.

That portion of the land which is not swamp at the present time may have been, for all we know, at the date of the grant.

The right accorded to plaintiffs was to cut down trees on the section.

One of the grounds of defendant is that he, as settler, had the right to cut wood for his own use. He cites A. & Eng. Ency. of Law, vol. 20, p. 456; U. S. v. Cook, 19 Wall. 591, 22 L. Ed. 210; Land Law U. S. In answer to this contention we deem it sufficient to state: This is true, but the right does not exist to the prejudice of owners whose title or right are of a date anterior to the settlers.

We pass to a consideration of the asserted title of defendant. We are informed by the record that the land was assessed in the name of the inhabitants of Bellevue, and in that name it was sold at tax sale; and the author of defendant, under whom he holds, bought it at tax sale.

The soil thus assessed and sold belonged to, and formed part of, the domain of the United States. The tax collecting department of the state could not thus wrest land from the public domain. Moreover, if it had been possible, in any way, to sell public land, the tax collector could not sell the land assessed in the name of the inhabitants of Bellevue, who were not the owners of the soil.

The tax title was an absolute nullity. It was introduced by defendant as evidence in support of his claim to government land. It could be opposed, in the manner and at the time it was, on the ground of its absolute nullity.

Our attention is invited to several decisions touching tax sales. The lands referred to in each of the decisions cited, in which tax sales were the subject of controversy, were owned by individuals, and therefore did not form part of the public domain. In the first case cited, it was said that the government had relinquished the land to the respective owners. Corkran Oil & Development Co. v. Arnaudet, 111 La. 577, 35 South. 747.

The government did not own the land in Ashley Co. v. Bradford, 109 La. 641, 33 South. 634, nor in the other cited case, Canter v. Williams, 107 La. 77, 31 South. 627, nor in the case of In re Lockhart, 109 La. 740, 33 South. 753. The issues are necessarily different where, as in the case pending, the land is still in the United States government.

In leaving this branch of the case, we will state that the curative article of the Constitution, cited by defendant, touching tax sales has no application whatever, for the land is absolutely not taxable, it being public lands. We think the bare statement of the proposition is enough.

Lastly, the defendant claims that he is a resident of the Bellevue neighborhood and that he also should be considered as one of the beneficiaries of the don gratuit which emanated from King Charles, the fourth, of Spain. He urges that he has the right to share in the common right of the inhabitants of Bellevue, to whom Governor Carondelet, as representative of the crown, issued the grant.

Defendant's residence is on part of section 53, not part, we take it, of the prairie. He does not own any prairie, or high land, in Bellevue for whose benefit the grant was made.

The concession was to the prairiemen, and not to woodmen; for the benefit of the prairies and meadows on the higher lands and not for the benefit of the swamps and low lands.

It has not heretofore suggested itself to us to refer to the exception of no cause of action. The exception set up that plaintiff had failed to allege that defendant had taken trees from the swamp of section 53.

The right extended to the whole section; if it did not, the onus was with defendant to prove the extent of the high land at the date of the grant.

We are unable to recognize the title for which defendant asks recognition.

There remains only one more step. That is to affirm the judgment.

It is affirmed.