HAMITER, Justice.
 

 Alvin R. Albritton and his two sons, William Louis and A. Sterling Albritton, claiming to be owners of a tract of land of approximately 39 acres, brought this suit against John Chester Childers, W. M. Wallace and L. L. Powers to recover the sum of $15,000 for the alleged wrongful cutting and taking of some 200,000 feet of timber from such property.
 

 Answering, defendants denied plaintiffs’ ownership of that part of the land from which the timber was retnoved, and they affirmatively averred title thereto to be in L.
 
 *903
 
 L. Powers. They prayed for a rejection of plaintiffs’ demands and a dismissal of the suit.
 

 After issue was joined Wallace died and his legal representative was substituted as a party defendant.
 

 Holding that plaintiffs are the owners of the property, and that the defendants were in legal bad faith in cutting and taking the timber, the district court, following a trial on the merits, awarded to the former a judgment in the sum of $3,135.60.
 

 All defendants appealed from the judgment. Thereafter, L. L. Powers died and his heirs were made parties in his place and stead.
 

 Plaintiffs have answered the appeals, praying that the award be increased to $7,-800 and that the fee of an expert witness be fixed at $200 and taxed as costs.
 

 The 39-acre tract of land claimed by these plaintiffs is bisected by the accepted boundary line, running east and west, that exists between the Parishes of East Feliciana and East Baton Rouge, the line having been surveyed, platted and reestablished under the authority of such parishes in the year 1890. The north 28 acres, from which all of the timber involved herein was taken, lies in East Feliciana Parish; and the remainder of the tract, or the south 11 acres, is situated in East Baton Rouge Parish.
 

 In proof of their title plaintiff introduced in evidence the following instruments :
 

 1. Patent No. 8568 from State of Louisiana to M. C. Aldrich, Jr., dated August 13, 1902, and decribing land as being all of fractional Section 12, Township 4 South, Range 3 East, in the Greensburg Land District, Parish of East Baton Rouge, containing 38.84 acres. (Note — the patent was not filed for record in East Baton Rouge Parish, but was recorded in East Feliciana Parish on October 21, 1929);
 

 2. Tax sale deed by the Sheriff of East Baton Rouge Parish, dated May 11, 1912 and recorded May 20, 1912, conveying to PI. F. Reymond, for the sum of $7.79 (unpaid taxes for 1911 and costs), “38.84 acres Sec. 12 T 4 R.3 E.” assessed in the name of M. C. Aldrich, IJr.;
 

 3. Act of sale from Henry F. Reymond (and another) to Alvin R. Albritton, dated December 20, 1916, transferring “without warranty even as to purchase price” the property acquired at the mentioned tax sale of May 11, 1912;
 

 4. Judgment of possession in the succession of Mrs. Louise Klein Albritton, who was the wife of Alvin R. Albritton and the mother of the other two plaintiffs.
 

 Each year after his acquisition in 1916 Alvin R. Albritton, as the evidence clearly shows, paid taxes under an assessment made in East Baton Rouge Parish of the entire 39-acre tract. Concededly, however, at no time did the plaintiffs, or any of them, take actual possession of the property.
 

 The claim of ownership urged by, for and on behalf of L. L. Powers relates only to the
 
 *905
 
 tract’s north 28 acres, which is situated in East Feliciana Parish, and his title thereto is deraigned as follows:
 

 1. The above described patent from the State of Louisiana to M. C. Aldrich, Jr. (relied on also by plaintiffs) ;
 

 2. Act of sale executed in June, 1925 by M. C. Aldrich to I. N. Naul, filed for record in East Feliciana Parish on October 21,1929 (patent recorded there same date), conveying (without warranty or obligation to return purchase price) the 38.84 acres of land acquired by such vendor under patent 8568;
 

 3. Act of sale by I. N. Naul to Everett Naul, dated April 30, 1930 and recorded same date, transferring with full warranty of title, a particularly described 38.84-acre tract of land situated in East Feliciana Parish, “being the same property acquired by vendor from Madison C. Aldrich June 1925”;
 

 4. Tax sale deed by the Sheriff of East Feliciana Parish, dated October 24, 1938 and recorded same date, conveying to L. L. Powers, for the sum of $12.03 (unpaid taxes for 1937 and costs), “39 Acres located in Ward six, Tract Sec. 12, T 4 S R 3 E” assessed to Everett Naul.
 

 Subsequent to the tax sale in 1938, and under assessments made in East Feliciana Parish, L. L. Powers annually paid taxes on the property he acquired.
 

 In the early part of 1948, Powers sought and obtained a survey of that part of the property covered by the tax deed located in East Feliciana Parish. Thereafter, specifically on May 5, 1948, he conveyed to defendant W. M. Wallace, by a warranty deed and for a cash consideration of $1,650, the merchantable timber on “all that portion of Sec. 12, T 4 S R 3 E lying in East Feliciana Parish”, the instrument reciting that such portion contained an area of 28.0 acres and particularly describing it by metes and bounds and in accordance with the mentioned survey. Another recital in the deed read: “Said L. L. Powers further agrees to bear the expenses of any law suit due to a defective title that may be acquired by this sale; and further agrees that he will make good any losses that Mr. Wallace may incur due to a defective title acquired in the sale of this timber.”
 

 Following the execution of such deed defendant John Chester Childers, pursuant to some arrangement had with the purchaser Wallace, proceeded to cut and remove the merchantable timber. However, after several days of cutting had elapsed, plaintiffs ordered Childers and Wallace to cease their activities; and Powers, when informed of such order, consulted his attorney.
 

 The latter, on examining an abstract respecting the 28 acres, advised Powers that his title was good. Then, in a letter of June 2, 1948, he wrote plaintiffs that, “According to this abstract, Mr. Powers is the record owner of the property and there doesn’t appear to be anything of record in East Feliciana Parish giving you any claim on 'this property.” Plaintiffs replied, under date
 
 *907
 
 of June 10, 1948, that they were asserting title to the entire tract of 39 acres.
 

 Childers and Wallace, under instructions of Powers, resumed and completed their timber removal operations; and, as a consequence, this suit was filed on August 18, 1948. Trial occurred in May, 1952, and the above mentioned judgment was read and signed March 11, 1953.
 

 Initially, it is important to consider the nature of the suit. Counsel for appellees, in their brief, state that “since neither plaintiffs nor defendants claim possession, and each side claims title, the issue is in the nature of an action to try title, and the best title, as between the parties to the suit, prevails.” Then they urge the validity of plaintiffs’ title, particularly the questioned tax sale in 1912 to Henry F. Reymond which is a vital link in the chain; and they assail the recorded 1938 tax deed under which defendant Powers holds, contending that it evidences an absolutely void sale for 1937 taxes assessed in East Feliciana Parish, the nullity having resulted because the same property was also assessed in East Baton Rouge Parish and the taxes due under that assessment were paid. Defense counsel, on the other hand, say that “since defendant Powers claims ownership of the land in question, our law requires plaintiffs to establish their title.”
 

 As heretofore shown plaintiffs admit that they have never possessed the disputed portion of the tract (north 28 acres); whereas, Powers, in 1948 and before this suit was instituted, had such portion surveyed and sold the timber thereon which was later cut, these being acts of actual possession as owner. It would seem, therefore, that this proceeding is more nearly like a petitory action than like an action to try title, as plaintiffs contend. But whichever be the nature of this suit, plaintiffs must first establish an apparently valid title in themselves; and until this is done the title of defendants is not at issue.
 

 Respecting Act 38 of 1908, LSA-R.S. 13 :- 5062, which provides for the action to try title where two or more persons lay claim to land by recorded title and no claimant is in actual possession, this court, in Dugas v. Powell, 197 La. 409, 1 So.2d 677, 679, said: “In a petitory action, in order to maintain his suit, the plaintiff carries the burden of proving title in himself, and must rely on the strength of his own title and not on the weakness of that of his adversary. The same rule applies to suits brought under Act 38 of 1908.” This doctrine was reaffirmed in the recent case of Stockstill v. Choctaw Towing Corporation, 224 La. 473, 70 So.2d 93.
 

 In Cook v. Martin, 188 La. 1063, 178 So. 881, 882, with reference to the petitory action, we observed: “This being a petitory action, the plaintiffs must rely on the strength of their own title and not on the weakness of the defendants’ title, which is not at issue until the plaintiffs have proved an apparent valid title in themselves. Arti
 
 *909
 
 cle 44, Code Prac.; Thomas & Bullis v. Stricker Land & Timber Co., Inc., 181 La. 784, 160 So. 413; Smith v. Chappell, 177 La. 311, 148 So. 242; Mecom v. Graves, 148 La. 369, 86 So. 917.”
 

 The Mecom case [148 La. 369, 86 So. 919], cited in support of such observation, contains the following comment: “By the nature of this suit, which is characterized in plaintiff’s brief as a petitory action, it is conceded that defendant is in possession as owner of the land; and, as such, she is entitled to stand upon her possession until and unless plaintiff shows a valid title in himself. The title of the defendant in a petitory action is not at issue until the plaintiff has proven an apparently valid title in himself. In this case, the defendant, without first proving her own title, was allowed to show, and did show, that the deed upon which plaintiff relied was absolutely null as to the land in contest. Plaintiff then had no interest in investigating defendant’s title.”
 

 In the chain of title of these plaintiffs, as we have shown above, is the 1912 tax sale to Henry F. Reymond which was predicated on an assessment in East Baton Rouge Parish for 1911 taxes. But this assessment (along with the resulting tax sale) included the contested 28 acres situated, undeniably, in the Parish of East Feliciana. And to that extent it was violative of Act 170 of 1898, LSA-R.S. 47:1952, which reads in part:
 
 “When a line between two parishes divides a tract of land, or plantation, each portion shall be assessed in the parish in which it lies;
 
 * * *. When the lines of parishes are in dispute as to their real location, the lines as shown by ‘Hardee’s Map’ of 1895, shall be the lines for assessment purposes and the parish or parishes affected thereby shall be governed by such lines unless a court having competent jurisdiction shall decree otherwise.” (Italics ours.)
 

 In 1911, when the assessment under consideration was made, and also in 1948, no dispute existed as to the real location of the boundary line between East Feliciana and East Baton Rouge Parishes. In the court houses of those political subdivisions, as appears from the record before us, were official maps agreeing that the correct boundary was that which was resurveyed and reestablished in 1890 by Robertson and Hagaman. And the line thus reestablished, the testimony of two civil engineers discloses, was at that time delineated on the ground and marked by monuments, placed at certain intervals, which even now are plainly visible.
 

 Accordingly, the tax assessor for East Baton Rouge Parish was without authority to assess the disputed north 28 acres; and, hence, the assessment and tax sale in that parish were null, void and ineffective as to the portion situated in East Feliciana Parish, unless there is applicable here the legal maxim invoked by plaintiffs and known as “l’erreur commune fait le droit”, it meaning “common error becomes the law.”
 

 
 *911
 
 -We cannot conclude that any “common error”, as contemplated by such maxim, existed at the time of the assessment with reference to the location of the north 28 acres. The parish boundary line which bisected the entire 39-acre tract was definitely fixed, by the Robertson and Hagaman resurvey of 1890, as before pointed out; and a plat of that resurvey, to which reference is made on the official maps of the two parishes, disclosed that the greater part of the divided tract lay to the north of the boundary and in East Feliciana Parish. The error that was committed appears to have been individual, rather than common, the assessor of East Baton Rouge Parish having failed to take notice of and give recognition to the -established boundary as revealed by available surveys and maps.
 

 ' The two cases cited and relied on by plaintiffs, which recognized and applied the invoked doctrine of “common error”, are distinguishable. In Cumming v. Boissatt, 2 La.Ann. 794, the validity of a mortgage on a slave depended upon its having been recorded in the parish of the mortgagor’s domicile. Recordation was in Rapides Parish in'which the mortgagor paid taxes, exercised political and civil rights, and where he believed he resided. But thereafter the establishment or running of the parish line on the ground disclosed that his house was within the limits of Avoyelles Parish. The court held that the jurisdiction previously exercised over the mortgagor’s house was the result of a common error which “cannot prejudice the rights acquired by mortgage creditors during its continuance.”
 

 The other case cited by plaintiffs is Booksh v. A. Wilbert Sons Lumber and Shingle Company, 115 La. 351, 39 So. 9, it involving the question of whether or not a tax adjudication of land to the State of Louisiana in 1886, predicated on an assessment made in West Baton Rouge Parish, was valid. For many years the land had been assessed in the Parish of Iberville, taxes were regularly -paid there by the owners, and all interested persons treated it as lying wholly within the limits of that parish.
 
 However, neither of the two parishes had ever taken any action to fix the boundary line between them.
 
 Under the “common error” doctrine and for other reasons the court annulled the
 
 tax
 
 adjudication.
 

 Here, unlike the situations in the discussed two cases, the boundary line between the Parishes of East Baton Rouge and East Feliciana was definitely established, was publicized through the medium of maps, and was surveyed on the ground long prior to the occurrence of the erroneous assessment.
 

 Since plaintiffs have failed to meet the requirement of exhibiting an apparently valid title in themselves it is unnecessary to examine the recorded title of the defendants and, additionally, their demands must be rejected.
 

 
 *913
 
 For the reasons assigned the judgment of the district court is reversed and set aside and the suit of plaintiffs is dismissed at their costs.
 

 FOURNET, C. J., and MOISE, J., absent.