HOOD, Judge.
This is an action to establish title to a 40-acre tract of land situated in St. Landry Parish. Plaintiffs are the heirs, legatees or assignees of Edward M. Boagni, deceased, and defendants are the heirs and assigns of John H. Harmanson, also deceased. The trial court rendered judgment sustaining an exception of no cause of action filed by defendants, and from this judgment plaintiffs have appealed.
At the time this suit was instituted and decided, the law provided that where two or more persons lay claim to land by recorded title, and where neither of the claimants is in actual possession of the land so claimed, either may maintain an action to establish title. LSA-R.S. 13:5062. The earlier jurisprudence required that in such an action plaintiff must allege and prove a better title than that of defendant. Metcalfe v. Green, 140 La. 950, 74 So. 261; Ellis v. Louisiana Planting Co., 146 La. 652, 83 So. 885; and Doiron v. Vacuum Oil Co., 164 La. 15, 113 So. 748. The more recent jurisprudence holds that in an action of this type the plaintiff is required to allege and to prove a valid title in himself, as in a petitory action. Dugas v. Powell, 197 La. 409, 1 So.2d 677; Stockstill v. Choctaw Towing Corp., 224 La. 473, 70 So.2d 93 and Albritton v. Childers, 225 La. 900, 74 So.2d 156. See also comments under LSA-C.C.P. Article 3653.
All well pleaded facts contained in plaintiffs' original and supplemental petitions, as well as facts established by documents filed by plaintiffs in response to a prayer for oyer, must be accepted as true in determining the issues presented by the exception of no cause of action filed herein. Carruth v. Hollister, 198 La. 212, 3 So.2d 592; French v. Querbes, 200 La. 654, 8 So. 2d 631; Roy O. Martin Lumber Co., Inc. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257. The following is our understanding of the pertinent facts, as alleged by plaintiffs and as reflected in said documents.
*496 By tax deed dated August 31, 1904, the subject property was sold to John H. Har-manson for unpaid taxes due for the year 1903, under an assessment in the name of Viguet Hebert. No issue is raised in this suit as to the validity of that tax sale.
By tax deed dated May 26, 1905, the same property was adjudicated to the State of Louisiana for unpaid taxes due for the year 1904, under an assessment in the names of J. F. and Verguet P. Hebert. No irregularity or defect in this adjudication is alleged by plaintiffs in their original or supplemental petitions, but the validity of that sale is attacked in a motion for a new trial or rehearing filed by plaintiffs after judgment had been rendered sustaining the exception of no cause of action.
By deed dated September 10, 1906, John H. Harmanson sold and conveyed an undivided one-half interest in and to this tract of land to John A. Thornton. Some of the defendants are heirs and assigns of the said John H. Harmanson, deceased, and other defendants are heirs and assigns of J ohn A. Thornton, also deceased.
In spite of the fact that the property was adjudicated to the State for unpaid taxes due for the year 1904, the property for some unexplained reason was assessed to John H. Harmanson for the years 1905 to 1910, inclusive, and the taxes due under those assessments were timely paid each year.
On June 18, 1912, the property was sold for unpaid taxes due for the year 1911 (under an assessment to Harmanson), and Edward M. Boagni bought the property at that tax sale. Plaintiffs, as has been stated, are the heirs, legatees and assignees of the said Edward M. Boagni, deceased, and their claim of ownership depends upon the validity of this tax sale.
The land was assessed to Harmanson for the year 1912, and to “Est. E. M. Boagni” for the years 1913 to 1944, inclusive. All state and parish taxes due on the property since 1912 have been paid by plaintiffs or by their author in title, Edward M. Boagni.
On May 28, 1945, Carl Gramann, acting as agent for defendants, redeemed this property from the State (it having been adjudicated to the State for unpaid 1904 taxes). The certificate of redemption properly recites that the “property is redeemed to said J. F. & Viguet P. Hebert against whom or which said taxes were assessed.” In order to effect this redemption, Gra-mann filed as proof of payment of all taxes due for the years 1905 through 1944, a certificate of the Sheriff and Ex-Officio Tax Collector for St. Landry Parish, that “Parish, local and state taxes for the years 1905 through 1912 has been paid in the name of John H. Plarmanson, state, parish and local taxes for the years 1913 through 1944 has been paid in the name of Est. E. M. Boagni.”
Plaintiffs contend that their ancestor-in-title, Edward M. Boagni, acquired a valid title to this property by the tax deed dated June 18, 1912. Defendants, on the other hand, contend that their ancestor-in-title, John H. Harmanson, acquired a valid title to this property by the tax deed dated August 31, 1904, and that the 1912 tax deed to Boagni is an absolute nullity because at the time of that tax sale title to the property was vested in the State of Louisiana, and accordingly the property could not legally be sold for taxes.
The trial judge did not assign written reasons for judgment, but since he maintained the exception of no cause of action filed by defendants, he apparently concluded that the tax deed to Boagni, dated June 18, 1912, was null and void, and accordingly that plaintiffs have failed to allege a valid title in themselves.
At the time Edward M. Boagni purportedly acquired this property by tax sale, the constitution provided that “all public property” shall be exempt from taxation. Const.1898, Art. 230; See also, LSA-Const. 1921, Art. 10, Sec. 4. Also, the law relating to the assessment of property and the collection of taxes at that time provided:
*497 “Section 61. Be it further enacted, etc., That after property has been adjudicated to the State in default of a bidder, as provided in Section S3, the same shall be continued to be assessed in the name of the person to whom it belonged at the date of the sale until the lapse of one year from date of recording the Act of Sale to the State, but the Tax Collector shall not sell the same under the assessment and no tax shall be collected or received thereon by the Tax Collector of or from the former owner while said property remains in a condition of forfeiture to the State and said continued assessment or any erroneous assessment to the former owner thereafter made and no error of the tax collector in receiving taxes under said continuous assessment or other erroneous assessment and non continued possession of said property by said former owner shall ever be considered or construed by any court of this State as an estoppel of the State from claiming said property or as affecting in way the title of the State to said property or its rights to possession thereof.” (Acts 1898, No. 170, Sec. 61, as amended by Acts 1910, No. 315. See also LSA-R.S. 47:1955.)
Under the provisions of the constitution and statutes which were in effect at the time of the 1912 tax sale, therefore, public property was exempted from taxation, and the Tax Collector was prohibited from selling property for unpaid taxes after that property had been adjudicated to the State and while it remained in a condition of forfeiture.
The jurisprudence of this State is established to the effect that where property has been adjudicated to the State, and has not been redeemed in the time and manner provided by law, the taxing officers of the State are without authority to assess and sell the property as belonging to the former owner or any other person. Water-man v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Neal v. Pitre, 142 La. 737, 77 So. 582; Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 So. 907; Guidry v. Sigler, La.App. 1 Cir., 21 So.2d 232 and Board of Commissioners, etc. v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921; Thomas v. Bomer-Blanks Lumber Co., La.App. 1 Cir., 105 So,2d 299; Johnson v. Chapman, La.App. 2 Cir., 179 So. 466, reversed on other grounds, 190 La. 1034, 183 So. 285.
The facts in Waterman v. Tidewater Associated Oil Co., supra, were similar to those presented here. In that case plaintiffs contended that their author in title acquired the property in dispute by tax deed dated October 1, 1921, for unpaid taxes due for the year 1920. Defendants contended that this tax sale was an absolute nullity for the reason that the property under the same description had previously been adjudicated to the State on September 25, 1920, under an assessment in another name for unpaid taxes due for the year 1919. The Court, in holding that the tax sale, dated October 1, 1921, was a nullity, said:
“With these facts before us, it is patent that the tax sale of 1921 is void as it is well established that, where property has been adhidicated to the State and not redeemed in [the)' time and manner provided by [the) statute, the taxing officers of the State are zvithout power to assess and sell the property as belonging to the former owner or any other person[213 La. 588, 35 So.2d 235.] (Emphasis added.)
In the more recent case of Thomas v. Bomer-Blanks Lumber Co., supra, the Court of Appeal, First Circuit, said:
“The plaintiff’s contention that the 1925 tax sale to Arthur Neal Smith is an absolute nullity is founded upon well-established jurisprudence to the effect that where property has once been adjudicated to the State and not redeemed within the time and in the manner provided by law, the taxing *498 officials of the State are without power to assess and sell the real estate as belonging to the former owner or any other person, and that therefore the tax sale in 1925 for the non-payment of 1924 taxes was absolutely null.” [La.App. Cir. 1, 105 So.2d 300.]
It is apparent, therefore, that if title to the property which is here in dispute became vested in the State by virtue of the 1905 tax adjudication, then the 1912 tax sale to Boagni was an absolute nullity, since the record indicates that the property had not been redeemed from the State prior to that tax sale and that it was still in a condition of forfeiture.
Counsel for plaintiffs contends, however, that the State has waived its rights under the adjudication for unpaid 1904 taxes, (1) by continuing to assess the property for taxes during the years 1905 to 1910, inclusive, and by collecting taxes under those assessments, and (2) by selling the property for unpaid taxes claimed to be due under an assessment for the year 1911. In support of this argument counsel relies on Booksh v. A. Wilbert Sons Lumber & Shingle Co., 115 La. 351, 39 So. 9; Martin v. Barbour, 140 U.S. 634, 646, 11 S.Ct. 944, 949, 35 L.Ed. 546; Sunset Realty & Planting Co., Inc. v. Fortier, La.App., Orleans, 10 La.App. 2, 119 So. 909; Codifer v. Aztec Land Co., 6 Orleans App. 214.
Although language was used in the Booksh case which seems to support the argument advanced by plaintiffs, we consider that language to be merely dicta, because the tax sale in that case was decreed to be invalid on the ground that prior to the sale the taxes had been paid in full under another assessment. Insofar as the arguments of counsel may he supported by the case of Martin v. Barbour, supra, (relating to property in the State of Arkansas), and the Sunset Realty Company and Codifer cases (both of which are court of appeal decisions), we think the language to that effect used in each of those cases is not consistent with decisions of the Louisiana Supreme Court on the same issue.
In our opinion the jurisprudence of this State is established to the effect that public property is exempt from taxation, and that the unauthorized acts of assessors and tax collectors in assessing and collecting taxes on property which previously has been adjudicated to the State for unpaid taxes cannot bind the State and do not constitute a waiver of title by the State. Cordill v. Quaker Realty Co., 130 La. 933, 58 So. 819; Leader Realty Co. v. Lakeview Land Co., 133 La. 646, 63 So. 253; Slattery v. Heilperin & Leonard, 110 La. 86, 34 So. 139; Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661.
In Slattery v. Heilperin & Leonard, supra, for instance, the Supreme Court said:
“ * * *. The assessing officer’s acts were entirely illegal, and for that reason afford no ground to base a claim to land adversely to the state. The assessing officer, who assesses property not segregated from the public domain, does not bind the state. The land not being taxable, no title passes, and the state is not estopped.” [110 La. 86, 34 So. 141.]
In Cordill v. Quaker Realty Co., supra, where a similar issue was presented, the Court said:
“ * * *. Public property is exempt from taxation. Assessors can assess only the property indicated in the revenue statutes, which exclude public property. Tax collectors are authorized to collect taxes only on such property as was legally assessed. They could not adjudicate public property to the state, or to any one else, for taxes illegally declared to be delinquent thereon; and the Auditor was only authorized to make sales under Act 80 of 1888 of property which had been duly adjudicated to the state for unpaid taxes. The unauthorized acts of the assessors, tax collector, and Auditor *499 cannot have the effect of binding the state of Louisiana, or of estopping it from claiming the property belonging to it, for the benefit of the free school fund * * *[130 La. 933, 58 So. 821.]
In Quaker Realty Co. v. Labasse, supra, the following language was used:
“The next defense is that by continuing to assess the property to Pelle-tier, and by afterwards assessing it to defendant and receiving payment from defendant of the taxes thus assessed, the state renounced the title acquired by her at the tax sale and estopped herself from ever setting it up against Pelletier or his assigns, and that, moreover, the said tax title of the state was cancelled by judgment of court, acquiesced in by the officers of the state, since they assessed the property to defendant and received payment of taxes from him.
“ * * *. So far as concerns the fact that, many years after the tax sale, the property was assessed to defendant and the taxes thus assessed were collected from him, this court has never held that such a proceeding could divest the tax title of the state. On the contrary, it has uniformly held the opposite. See, among other decisions to that effect, Slattery v. Heilperin & Leonard, 110 La. [86] 95, 34 So. 139; Cordill v. Quaker Realty Co., 130 La. 933, 58 So. [819] 821.” [131 La. 996, 60 So. 663.]
Also, as has already been pointed out, Act 315 of 1910 (amending Act 170 of 1898, Sec. 61) specifically provides that the continued assessment of property previously adjudicated to the State, or the collection of taxes under such continuous assessment or other erroneous assessment, shall not be construed as an estoppel of the State from claiming said property or as affecting the title of the State to such property.
We conclude, therefore, that the State has not waived its rights under the adjudication for unpaid 1904 taxes because of the fact that the property continued to be assessed for taxes during subsequent years, with taxes being paid under those assessments, and because of the subsequent sale of said property for taxes.
Plaintiffs further contend that Edward M. Boagni acquired inchoate rights in and to the subject property at the 1912 tax sale, which rights ripened into a good and valid title by virtue of the redemption in 1945. It is argued that “after property is adjudicated to the State for state taxes, the title does not vest in the State free from all other obligations, but the property may be sold, subject to the rights of the State, for taxes of other taxing agencies created by the State, such as municipalities or parishes,” and that the subsequent redemption of the property from the State “inures to the benefit of the tax debtor-owner and all those holding under him.”
In support of this argument, counsel for plaintiffs relies, to some extent at least, upon a line of jurisprudence holding that property may be sold by a municipality for unpaid city taxes, even though the same property previously may have been adjudicated to the State for delinquent state taxes, and that under those circumstances the purchaser at the city tax sale acquires inchoate rights which may ripen into a valid title upon the subsequent redemption of the property from the State. Some of these cases are, Bellocq v. City of New Orleans, 31 La.Ann. 471; Garnet’s Estate v. Lindner, 159 La. 658, 106 So. 22; Stockbridge v. Martin, 162 La. 601, 110 So. 828; State ex rel. Tulane Homestead Ass’n v. Montgomery, 185 La. 777, 171 So. 28. See also La. Const., 1921, Art. 10, Sec. 14.
The property in dispute in this case, of course, was not located within the corporate limits of any municipality, and no city taxes are involved here. The property was adjudicated to the State in 1905 for un *500 paid state, parish and special taxes due for the year 1904. And, in 1912 the same property was sold by the Sheriff and Ex-Of-ficio Tax Collector for unpaid state, parish and special taxes due for the year 1911.
We think the cases cited by counsel for plaintiffs establish that property may be sold for unpaid city taxes, even though the same property previously may have been adjudicated to the State for unpaid state and parish taxes. The purchaser at the city tax sale, under those circumstances, acquires inchoate rights to the property, which may ripen into a valid title upon the subsequent redemption of such property from the State. The reason for this rule, however, is that the law specifically authorizes a municipality to assess and collect taxes separately from those assessed and collected by the State and parish, and if it should be determined that the municipality is precluded from assessing property for city taxes and enforcing payment of such taxes because the property had previously been adjudicated to the State, then the municipality may be seriously handicapped in obtaining its revenues, a result which the law obviously did not intend. LSA-R.S. 33:461; LSA-R.S. 33:624; La.Const., 1921, Art. 10, Sec. S. In that connection, the Supreme Court in Garnet’s Estate v. Lind-ner, supra, said:
“The purpose of the law in authorizing an adjudication for unpaid taxes to either taxing authority, the state or one of its subdivisions, is, primarily, to secure the taxes due on the property adjudicated without impairment of the lien of either. Such adjudication is made only in the absence of a bid sufficient in amount to pay the taxes and costs. * * *.
* * $ ‡ *
“The positive requirement of the law is that subsequent to the adjudication to the state the property shall, during the period reserved for its redemption, continue to be listed and assessed in the name of its former owner. In view of the jurisprudence to which we have referred, this can only mean that the property shall continue to be listed and assessed in the name of its former owner until the state has parted with its title. In these circumstances, can it be contended that the municipality is prohibited from proceeding against the property for its taxes due thereon? We think not. In our opinion, the municipality is authorized to sell the property to satisfy its tax lien. Such sale, of course, is of necessity subject to the rights of the state. The title conveyed by the city to the purchaser at its subsequent tax sale is inchoate, to become perfect only when said purchaser has redeemed the property from the state, and thereby satisfied its claim for taxes, penalties, and costs. This right of redemption exists until it is cut off by some action of the state indisposing of the property otherwise. See Muller v. Mazerat [109 La. 116, 33 So. 104], cited supra.” [159 La. 658, 106 So. 24.]
In Bellocq v. City of New Orleans, supra, the Court held that “State and City taxes are concurrent' privileges, and we assimilate the rights of both of those of concurrent mortgage creditors.”
 Although a municipality may assess and collect taxes on property after it has been adjudicated to the State, and may sell the property for unpaid city taxes while it is in a condition of forfeiture to the State, no such authority is vested in a parish, because the law does not authorize a parish to conduct a separate tax sale or, in the event an adequate bid is not received at such sale, to have the property adjudicated to the parish. State and parish taxes are assessed together and are collected at one time by the Sheriff and Ex-Officio Tax Collector. If state and parish taxes are not timely paid the property is sold to a purchaser or adjudicated to the State at a tax sale conducted by the Tax Collector.
*501 Since the law specifically authorizes municipalities to sell property for delinquent city taxes, separately from the tax sales conducted by the Tax Collector for delinquent state, parish and special taxes, we think the jurisprudence relied on by plaintiffs relating to the rights acquired by purchasers at city tax sales is not applicable here.
In Johnson v. Chapman, supra, a tract of land was adjudicated to the State for unpaid taxes in 1922. The same property was later sold to defendants’ author in title, W. L. Hamner, at a tax sale in 1928, and sometime thereafter the property was redeemed from the State (from the 1922 tax adjudication). The Court of Appeal, Second Circuit, held that the 1928 tax sale to Hamner was void, and that the redemption from the State did not validate that sale. The following language was used by the court:
“The state having allowed plaintiff to redeem the property to which it held indefeasible title, thereby restored same to the owners as of the date of the sale, or their transferees. The benefits flowing from the redemption devolved upon plaintiff as effectively as they would have upon Pattie Chapman or her heirs, had she not conveyed. The surrender by the state of its title to the land did not have the effect of injecting vitality into the tax deeds to Hamner, which were null and void ab initio.” 179 So. 470.
In Neal v. Pitre, 142 La. 737, 77 So. 582, the property there in dispute was adjudicated to the State for unpaid taxes in 1894. In 1908, while title to the property was vested in the State, the same land was again sold at a tax sale to B. H. Lyons, defend.ant’s author in title. A few days after this last tax sale the property was redeemed from the State. The court held, however, that the 1908 tax sale was a nullity since the property was owned by the State at that time, that Lyons acquired no rights to the property at that tax sale, and that the redemption of the property from the State did not have the effect of validating the 1908 tax sale or vesting Lyons with title.
Also, in Thomas v. Bomer-Blanks Lumber Co., supra, the property was adjudicated to the State for unpaid taxes in 1918. While title was still in the State it was again sold for unpaid taxes in 1925 to defendant’s author in title. The property was then redeemed from the State in 1938. Under those circumstances, the Court of Appeal, First Circuit, consistent with the prior jurisprudence hereinabove cited, held that the 1925 tax sale was an absolute nullity.
Since the property at issue here had previously been adjudicated to the State, and had not been redeemed in the manner provided by law at the time of the 1912 tax sale, we are convinced that the 1912 tax sale to Boagni (by the Tax Collector, for state, parish and special taxes) was null and void, and that Boagni did not acquire any inchoate rights to the property by that tax sale which could have ripened into a valid title upon the subsequent redemption of the property from the State in 1945.
Counsel for plaintiffs argues further, however, that “where a person claims title to property which then belongs to a sovereign and said property is assessed and sold at tax sale, * * * and said person subsequently secures title from the sovereign, he obtains said property subject to the rights of the tax purchaser.” In support of this argument counsel relies on the case of Corkran Oil & Development Co. v. Arnaudet, 111 La. 563, 35 So. 747, 755. We, however, do not interpret the Corkran Oil & Development Co. case as supporting plaintiffs’ position on this issue. In that case defendants’ title was based on a tax sale for delinquent taxes due for the year 1881. Plaintiffs contended that the tax sale was an absolute nullity because the property at that time belonged to the United States, and accordingly it was not subject to assessment or taxation. The Supreme Court held, however, that by Act of Congress, adopted in 1897, the United States re *502 linquished any claim which it may have had to that property at the time of the tax sale, and that the effect of that statute was to make the relinquishment act “retrospectively,” in such manner as to cover and protect any claims or rights of third persons to the property prior, to the date of that act. It accordingly was held that the 1881 tax sale was valid, because at that time the property was not owned by the United States, but was privately owned and was subject to taxation by the State. In that connection, the Court said:
“It is a matter of no moment what rights might have been held under other and different circumstances, for we must take the case as we find it, and, so taking it, the property must be considered precisely as if it had been private property when it was assessed and sold for state taxes. * * *.”
It is apparent, therefore, that the Cork-ran Oil & Development Co. case is not applicable here, because there the court specifically held that the property was not public property but, on the contrary, was privately owned at the time of the tax sale. The Court did not hold that if property is adjudicated to the State for delinquent taxes, and is later redeemed from the State, this redemption validates an intervening unauthorized tax sale of the property. In the instant suit title to the property was clearly vested in the State at the time of the 1912 tax sale, and accordingly it was exempt from taxation as “public property.” Const., 1898, Act 230. The 1912 tax sale was a nullity, and in our opinion the purchaser acquired no rights by virtue of that sale.
Plaintiffs assert further that defendants, as heirs and assigns of Harmanson and Thornton, are estopped from denying that they were owners of the property at the time of the 1912 tax sale. 'As a basis for this argument, it is pointed out that between the 190S and the 1912 tax sales Harmanson and Thornton exercised acts • of ownership over this property, consisting of the execution of acts of sale and acts of mortgage and paying taxes on the property.
We find no merit to this argument, because in our opinion estoppel may not be invoked to validate a proceeding which is invalid per se. Graham v. Jones, 198 La. 507, 3 So.2d 761. In Conover v. Allison, La.App. 1 Cir., 178 So. 756, 759, plaintiffs, relying on a tax sale which the court found to be void, pleaded estoppel against the defendant. The court held that plaintiffs could not give life to the invalid tax sale by urging estoppel, the following language being used r
“As the tax sale was null for the reasons stated above, plaintiffs cannot now give life and effect to an invalid deed by urging against the owners a plea of estoppel. The rights of plaintiffs and their author in title must be judged from the situation as it existed in 1924 when the invalid sale was made;, if the tax purchaser acquired no title then to the property, neither he nor his vendees could acquire any by urging the plea of estoppel.”
Neither do we find any merit to-plaintiffs’ contention that “where property passes to the State under an adjudication' to it, the original owners are not concerned: with the legality of tax sales subsequently made.” In this case defendants had the-right to redeem the subject property from the State unless and until the State divested' itself of title by some other means. As long as plaintiffs had this right to redeem the property, it cannot be said that they are not concerned with the legality of tax sales subsequently made.
Plaintiffs further contend that where a party obtains title from the sovereign subject to an earlier tax forfeiture to. the State, said party must attack the tax title within the constitutional peremptive-period of three years. See Const., 1898, Art. 233; and Const., 1921, Art. 10, Sec. 11. The prescription or peremption provided in the above cited sections of the constitution, however, is not applicable to a. *503 purported sale for taxes of public property, which sale is an absolute nullity. Puritan Co. v. Clarkson, 145 La. 1099, 83 So. 315, 316. In the cited case the Supreme Court said:
“Appellant relies upon a plea of prescription of three years, under article 233 of the Constitution. It has been decided that a sale, purporting to be a sale for taxes, of lands belonging to the public domain, and therefore not subject to assessment for taxes, is an absolute nullity, not protected by the provisions of article 233 of the Constitution. See Richard v. Perrodin, 116 La. 440, 40 South. 789. The reason for the ruling in that case, where the land belonged to the United States government, is applicable here, where the land belonged to the state; that is, that the property was not subject to assessment for taxes.”
In an application for a new trial and/or rehearing filed after judgment had been rendered by the trial court, plaintiffs alleged that they had discovered new evidence to the effect that the taxes for 1904 had been paid by John H. Harmanson and, accordingly, that the 1905 tax sale in which this property was adjudicated to the State is an absolute nullity. The trial judge refused to grant a new trial or rehearing. Plaintiffs contend that the trial court erred in refusing to grant this relief, and they strongly urge us to consider the allegations contained in this application and to remand the case to the district court for a new trial.
We cannot consider plaintiffs’ allegations to the effect that they have discovered new evidence which would prove that the taxes for 1904 were paid by Har-manson, because no allegations are contained in the original or supplemental petitions filed by plaintiffs to the effect that the 1904 taxes had been paid. That is not one of the grounds, therefore, on which plaintiffs based their action to establish title to this property. In our opinion a party to a suit is not entitled to a new trial upon the ground of newly discovered evidence which would prove a fact which has not been alleged in his pleadings. Olivedell Planting Co. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23, 28. In the cited case, the Supreme Court of Louisiana stated:
“Defendant finally contends that certain evidence was excluded and certain amendatory papers were not permitted to be filed. The record discloses that this matter was brought up in a motion for a new trial, which motion was filed about 14 months after the trial was had on the merits and in which motion the defendant sought to supply an additional defense — that of contributory negligence. In an unbroken line of decisions, our jurisprudence has preserved the stability of our law on this point. That line of decisions begins in Long v. Robinson, 5 La.Ann. 627. There, the court held that ‘A party cannot get a new trial, upon the ground of newly discovered evidence which would prove a fact not alleged by him in his pleadings, and of which he must have been aware before the trial.’ Such is the law today.”
The issue of whether the 1905 tax sale is void because of the prior payment of 1904 taxes was not before the trial court, and it is not before us at this time. For that reason we express no opinion as to whether the petition would state a cause of action if it contained allegations similar to those contained in the motion for new trial or rehearing. We do hold, however, that since no allegations to that effect were contained in the pleadings filed by plaintiffs, we cannot consider these new allegations as the basis for granting a new trial. Our refusal in this suit to consider the cause of action pleaded by these new allegations is specifically without prejudice to the plaintiffs’ right to urge it in a subsequent suit.
We are convinced that the trial court was correct in sustaining the exception of *504 no cause or right of action filed by defendants. Accordingly, for the reasons herein set out, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.