TATE, Judge
(concurring in denial of rehearing).
The grossly inequitable result in this case seems to be required by the jurisprudence discussed and followed in Boagni’s Heirs v. Thornton, La.App. 3 Cir., 132 So.2d 494. However, the facts of the present case differ somewhat from those in the decisions relied upon and may justify a different result.
In the present decision, the purchaser had acquired lands by tax sale from the State and had possessed them for many years. Nevertheless, because at the time of the tax sale the land had already been adjudicated to the State because of the same tax debtor’s earlier non-payment of the 1930 taxes, all subsequent transactions concerning the property are deemed nullities, because the title to the property is deemed to have been in the State at all times following this earlier adjudication.
Thus, when the original tax debtor redeemed the property from the earlier (1930) adjudication in 1949, the tax debtor is held to be re-invested with title to the property, despite the fact that Mr. Nanney had acquired ten years earlier pursuant to a subsequent tax sale resulting from the nonpayment of 1939 taxes owed by this same tax debtor.
While I agree that the latter tax sale should be invalid against the State itself and against those buying from the State by sale, nevertheless, if this were a matter of first impression, it would seem to me that the tax debtor who redeems from the first adjudication (and those acquiring through him), should not have any standing to urge the nullity of the subsequent tax sales made because of his own nonpayment of subsequent taxes.
That is, by the redemption for 1930 taxes, the tax debtor should be restored only to the position he would have been in if he had paid the taxes for that year — but not to the better position which we have held him entitled herein, by which he is reinvested with full title to the property just as though he had paid the taxes on the property after 1930, when in fact he failed to pay them. Thus, the tax debtor redeeming for non-payment of 1930 taxes should have no better standing to attack the 1940 tax sale (which resulted from the same tax debtor’s non-payment of subsequent taxes), than if instead he had paid the 1930 taxes — in which case, the five-year peremption would bar his attack in 1949 upon the 1940 tax sale.
I think that a serious question is presented by the effect of the 1938 certificate of redemption for non-payment of the 1931 taxes, from which certificate the defendant Nanney’s title stems.
We hold that no title was revested by this certificate of redemption based upon adjudication for 1931 taxes, because the same property had earlier been adjudicated to the State for non-payment of 1930 taxes. (In 1949, following filing of this suit, the plaintiff Johnston secured a certificate of redemption upon payment of these 1930 taxes.)
We hold that, after the earlier adjudication for 1930 taxes the tax assessors were without authority to assess and sell the property as belonging to the owner or any other person, since the State had acquired title to the land by the earlier adjudication. Therefore, we hold the second adjudication *277 ■for non-payment of 1931 taxes to be invalid, so that the 1938 redemption from such invalid adjudication is likewise a complete nullity.
The statutory enactment applicable to this certificate of redemption provided that when issued in compliance with the statutory provision such certificates of redemption shall “be held and taken as evidence of the full and complete redemption of such lands, and as legal and valid.” LSA-R.S. 47:2224 (this provision is derived from Act 88 of 1928, and was applicable to certificates of redemption issued under both the 1898 act and also the depression Act 47 of 1938, under authority of which latter statute the 1938 certificate of redemption was issued.)
Because the 1938 certificate of redemption for unpaid 1931 taxes upon which the defendant relies stated that it was issued “without prejudice to any privileges or mortgages of the State * * * for other taxes”, I am not prepared to dissent from our holding that this 1938 certificate of redemption was not “legal and valid”, see LSA-R.S. 47:2224, and did not constitute the “full and complete redemption of such lands”, LSA-R.S. 47:2224, since the property had also earlier been adjudicated to the State for unpaid 1930 taxes.
A strong argument can be made, however, that under the statutory language the 1938 certificate of redemption was legal and valid and constituted a full and complete redemption of such lands and that, strictly speaking, it did not prejudice any “privilege” or “mortgage” of the State for any other taxes, as these terms are technically defined. This is especially true because the 1938 act under which this redemption was effected was designed to get property back upon the tax rolls upon payment of only one year’s taxes, even though several years’ taxes had not been paid.
Fiedler v. Pipes, 236 La. 105, 107 So.2d 409, concerned a sale by the State of lands previously adjudicated to it for nonpayment of taxes. The original tax debtor subsequently redeemed them and contended, inter alia, that the intervening sale was invalid because it was based upon a subsequent adjudication for 1934 taxes, whereas the tax debtor redeemed from an earlier adjudication for unpaid 1930 taxes.
The holding in the decision was that the tax debtor’s redemption for non-payment of 1930 taxes was a complete nullity, because the State had already sold (not redeemed) to a third person after the tax debtor’s vested right to redeem the property had expired. Although this holding may not be directly applicable to the present situation, nevertheless the rationale is persuasive, to the effect that, after the tax debtor’s vested right to redeem had expired, the tax debtor had no standing to attack the nullity of another’s title, after the State had divested itself of title, on the ground that instrument by which the State transferred the title to the other stated that it was based upon the invalid second adjudication for unpaid 1934 taxes, rather than on the valid first adjudication for unpaid 1930 taxes.
If the Supreme Court should see fit to re-examine the question, it may well he that it will reach the conclusion that the rule followed in the line of decisions summarized by Boagni’s Heirs that transactions were nullities relating to properties previously adjudicated to the State, was never intended to permit the original tax debtor to claim back property abandoned by him for many years, at least insofar as third persons who had acquired rights in the property resulting from this same tax debt- or’s non-payment of taxes in subsequent years. To permit the tax debtor to do so, is to reward laches and to permit the wrongdoer to profit by his own wrong, to the prejudice of innocent third persons.